THE EMIGRANT INDUSTRIAL SAVINGS BANK, Landlord, Respondent, v. ONE HUNDRED EIGHT WEST FORTY NINTH STREET CORP., Tenant, Appellant.

First Department, December 23, 1938.

*Samuel Roth* of counsel [*Albert D'Alessandro* with him on the brief; *Menken Brothers*, attorneys], for the appellant.

*George M. Mulligan* of counsel [*Edwin A. Berkery* with him on the brief; *Joseph H. Praetz*, attorney], for the respondent.

CALLAHAN, J.   The landlord instituted this summary proceeding in the Municipal Court to recover certain premises for non-payment of an installment of rent due January 15, 1938, in the sum of $375 and the sum of $45.01 as additional rent alleged to be due for certain repairs made by the landlord.

The tenant admitted the execution of a lease, hiring from the landlord certain premises described as the second, third, fourth and fifth floors in buildings known as Nos. 108–110–112–114 West Forty-ninth street, New York, N. Y., at an annual rental of $9,000, payable in semi-monthly installments of $375 in advance, on the first and fifteenth days of each month, and that the tenant entered into the possession of the premises and still occupies the same, but denied each and every other allegation contained in the petition.

For a separate defense and counterclaim, and by way of setoff, the tenant further alleged that under the lease the landlord was obligated to make all repairs in and to the demised premises, excepting such repairs as were occasioned by the neglect or misuse of the tenant; that certain repairs, consisting of tile work in various apartments in the premises, became necessary, and that the necessity for the same did not arise out of neglect or misuse on the part of the tenant; that the landlord was duly notified by the tenant of the necessity for the making of the said repairs, but the landlord failed to repair, whereupon the tenant caused the repairs to be made at a cost of $365; that the tenant duly tendered to the landlord the sum of ten dollars, representing the difference between the installment of rent due and owing under the aforesaid agreement and the cost of making the repairs, but the tender was refused; that the tenant is entitled to a judgment setting off the $365 against the $375 rent which was due, leaving a balance of ten dollars owing from the tenant to the landlord.

It was conceded that the premises involved in the lease were multiple dwellings; that the tenant leased them for the purpose of renting them as apartments, furnished rooms and a hotel.

The tenant conceded the truth of all of the allegations of the petition, excepting so much as alleged that the sum claimed by the landlord for repairs was due and owing, but as to such repairs the tenant conceded that the work was done by the landlord, that the landlord paid forty-five dollars and one cent for such work and that that amount was the fair and reasonable value thereof.

The landlord conceded that it was duly notified by the tenant of the claimed necessity for the making of the said repairs to the tile work; that it failed to make such repairs after such notice; that the tenant thereupon itself caused the repairs to be made at a cost to it of $365, which was the fair and reasonable value thereof, and that the tenant thereafter duly tendered to the landlord the sum of ten dollars, representing the difference between the installment of rent due on January 15, 1938, and the cost of making the repairs, but that it refused the tenant's tender.

Following these concessions. the landlord offered the lease in evidence and rested.

The tenant adduced considerable testimony regarding the condition of the tile in the early part of January, 1938, immediately prior to its repair by the tenant, for the purpose of showing that the necessity for these repairs did not arise out of neglect or misuse by the tenant.

The landlord did not offer any testimony to controvert the last claim.

When both sides had rested, counsel for the landlord contended that in the absence of an express covenant in the lease whereby the landlord undertook the obligation to repair, that obligation, by virtue of common law, rested upon the tenant.

The tenant, on the other hand, contended that, inasmuch as the premises in question constituted a multiple dwelling and were leased by it to be sublet for dwelling purposes, the landlord's contention in regard to the common law was untenable and no longer applied, but that it was the landlord's duty to repair under section 78 of the Multiple Dwelling Law. It claimed that the common-law obligation to repair, which once rested upon the tenant, had been shifted upon the shoulders of the landlord by the statute, and that before the tenant would be obligated to repair, such obligation could only arise out of an express assumption on its part in the lease, and was limited strictly to the repairs which the tenant thereby expressly undertook to make.

Answering the tenant's argument, the landlord took the position that the tenant, as lessee of the whole of the dwelling portions of the premises, was afforded no protection by section 78 of the Multiple Dwelling Law, as the tenant had assumed the liability imposed on an owner by that statute.

In making the last contention, the landlord relied on the decision of the Appellate Term, First Department, in *King* v. *Six Ninety & Two Realty Corp.* (153 Misc. 619). The authority cited seems to have been overruled by the recent decision of the Court of Appeals in *Weiner* v. *Leroco Realty Corp.* (279 N. Y. 127), at least in so far as the question relates to an owner's liability for tort. The Court of Appeals held that the owner of the fee may be held liable to one injured on the premises for failure to comply with section 78 of the Multiple Dwelling Law, though it has leased the whole premises to another. We are not determining the question of liability in tort of this lessor for personal injuries suffered by a tenant or another, but solely the obligations of the parties under a lease and the right of the lessee to recover from the lessor for breach thereof.

The trial court herein decided in favor of the landlord, limiting its judgment solely to the installment of rent which fell due on January 15, 1938. It disallowed, without comment, the claims of both the landlord and the tenant for reimbursement for the repairs in question. The tenant then appealed to the Appellate Term, which affirmed the judgment of the trial court, but with leave in the order of affirmance to appeal to this court.

The landlord and tenant stipulated, on the appeal to the Appellate Term, that the lease consisted of a printed form, known as standard form of apartment lease, prepared by the Real Estate Board of New York, Inc., and printed in the record on appeal, paragraphs numbered " 2," " 4," " 5," " 6," " 8," " 13," " 17," " 18," " 37 " and " 40 " thereof.

The repair clause of the lease reads as follows: " 5. Tenant shall take good care of demised premises and fixtures therein and subject to provisions of Article 4 hereof shall make, as and when needed, *as a result of misuse or neglect by Tenant,* all repairs except structural repairs not occasioned by Tenant's use and occupancy in and about demised premises necessary to preserve them in good order and condition, which repairs shall be in quality and class equal to the original work. However, Landlord may repair, at the expense of Tenant, all damage or injury to demised premises, or to the building, of which the same form a part, or to its fixtures, appurtenances or equipment, done by Tenant or Tenant's servants, employees, agents, visitors or licensees, or caused by moving property of Tenant in and/or out of the building, or by installation or removal of furniture or other property, or resulting from fire, air-conditioning unit or system, short circuits, overflow or leakage of water, steam, illuminating gas, sewer gas, sewerage or odors, or by frost or by bursting or leaking of pipes or plumbing works,

or gas, or from any other cause, due to carelessness, negligence or improper conduct of Tenant, or Tenant's servants, employees, agents, visitors or licensees. *Except as provided in Article 10 hereof, there shall be no allowance to Tenant for a diminution of rental value,* and no liability on the part of Landlord by reason of inconvenience, or annoyance arising from the making of any repairs, alterations, additions or improvements in or to any portion of the building or demised premises, or in or to fixtures, appurtenances or equipment, *and no liability upon Landlord for failure to make any repairs, alterations, additions, or improvements in or to any portion of the building or demised premises, or in or to fixtures, appurtenances or equipment."* (Italics by the court.)

The reference to article 4 applies to alterations, decorations, additions or improvements, and has no bearing upon the present controversy. It, therefore, appears that the tenant's liability to make repairs, in so far as expressly provided in the lease, is limited to those resulting from its misuse or neglect.

Paragraph " 6 " of the lease requires the tenant to " comply with all laws, orders and regulations of Federal, State, county and municipal authorities, and with any direction of any public officer or officers, pursuant to law, which shall impose any duty upon Landlord or Tenant with respect to demised premises, or the use or occupation thereof, but Tenant shall not be required to make any expenditure to comply therewith unless necessitated by Tenant's fault."

Paragraph " 37 " of the lease requires the tenant, in case of breakage or other damage or injury to the glass in the demised premises, to repair the same at its own cost and expense.

Except as indicated, there is nothing in the lease which in any way refers to an obligation on the part of the tenant to make repairs.

With respect to the landlord, there is likewise no definite or express obligation to make repairs. However, reference is made (¶ " 13 ") to the landlord's right to go in and make repairs whenever the landlord may deem it necessary or desirable, and the landlord is exempted from liability for failure to make such repairs as " it may be obligated to make under the terms hereof " (¶ " 40 "), until written notice is received by it and an opportunity afforded to make such necessary repairs.

Under the common law, the landlord was not obligated to repair in the absence of an express covenant. (*Witty* v. *Matthews,* 52 N. Y. 512.) The reservation of the right to re-enter to make such repairs as the landlord might deem necessary did not impose a duty on the landlord to make repairs, and the tenant could not

require him to do so. (*Elefante* v. *Pizitz*, 182 App. Div. 819; affd., 230 N. Y. 567; *Baitzel* v. *Rhinelander*, 179 App. Div. 735.) As there was an express covenant that the lessee would make such repairs as were due to its own neglect or misuse, no covenant would be implied on its part to make additional repairs. The rule is that where there is an express covenant in regard to any subject, no covenants are to be implied as to the same subject. (*Burr* v. *Stenton*, 43 N. Y. 462.) We, therefore, have a situation in the present case, in which neither of the parties has covenanted to make the repairs involved. Accordingly, if the tenant's counter-claim is to be sustained, it must find support under section 78 of the Multiple Dwelling Law. That statute provides:

" § 78. Repairs. Every multiple dwelling and every part thereof shall be kept in good repair, and the roof shall be kept so as not to leak and all rain water shall be so drained and conveyed there-from as to prevent its dripping to the ground or causing dampness in the walls, ceilings, yards or areas. The owner of such multiple dwelling shall be responsible for compliance with the provisions of this section; but the tenant also shall be liable for every violation of the provisions of this section if such violation is caused by his own wilful act or negligence or that of any member of his household or his guest." (Amd. by Laws of 1931, chap. 228, § 20, in effect April 2, 1931.)

Section 78 undoubtedly places the burden on the owner of a multiple dwelling to keep the premises in good repair. The purpose of this statute, however, is to protect those dwelling in tenements or visiting therein, who are unable to care for themselves. (*Altz* v. *Leiberson*, 233 N. Y. 16.) Defendant may not be placed in that class.

Because the statute (Multiple Dwelling Law, § 78) places the burden on the owner to keep the premises in good repair, it does not follow that the lessee may enforce that obligation. In commenting on the question of the right of the lessee under a lease to enforce compliance by the lessor with an order of a municipal department concerning alterations to a building, the Court of Appeals said (*Gould* v. *Springer*, 206 N. Y. 641, at p. 647): "The rights and obligations of the parties depend on the lease. There was no covenant on the part of the lessors to make repairs of any character and, hence, as between themselves and the lessee they were under no obligation to comply with the order made in 1904. (*Franklin* v. *Brown*, 118 N. Y. 110, 113; *Witty* v. *Matthews*, 52 N. Y. 512, 514; *Daly* v. *Wise*, 132 N. Y. 306.) While they might have been subject to an action for a penalty brought by the city that was no concern of the lessee and gave him no right to compel action by the lessors."

In the recent case of *Davar Holdings, Inc.*, v. *Cohen* (255 App. Div. 445) the question involved was whether a tenant in a single apartment in a multiple dwelling might, after his landlord had failed to comply with orders of the New York city tenement house department requiring certain repairs to be made, comply with such orders himself and counterclaim in summary proceedings for the value of the work done. In that case we stated: " We are of opinion, therefore, that in a case of this character the tenant may not, himself, procure the required work to be done. Under an order so issued, the controversy is between the landlord and the public authorities. It is the landlord and not the tenant who must satisfy the department that the work has been done properly. This statute providing, as it does, its own penalties, should not, as between landlord and tenant, be further extended in scope. Moreover, it is to be noted that outside of the penalties fixed by the statute itself, the liability of the landlord has been enlarged only to the extent of subjecting him to additional liabilities, not in contract, but in tort, with respect to the tenant and others. (*Cullings* v. *Goetz*, 256 N. Y. 287, 292.) "

What we said in the *Davar* case (*supra*) concerning the rights of a tenant residing in a single apartment to make repairs in conformity with a departmental order would apply with greater force to a corporate lessee which occupied no part of the premises, and concerning repairs as to which no order had been made by any public body. It is our view, therefore, that section 78 should not be extended to permit the present lessee to do work which he claims the statute required the lessor to do, and to counterclaim for the value of such work on the theory of breach of contract.

That it was the intention of the parties hereto that no such right as is claimed by the tenant herein should exist, is evidenced by the clause in the present lease which provides " there shall be no allowance to Tenant for a diminution of rental value * * * and no liability upon Landlord for failure to make any repairs, alterations, additions, or improvements in or to any portion of the building or demised premises, or in or to fixtures, appurtenances or equipment." By this provision, the tenant stipulated against his right to recover for the landlord's failure to repair. Even if the statutory duty could be said to have been imposed for the benefit of one in this lessee's position, the tenant might waive same. (*Willy* v. *Mulledy*, 78 N. Y. 310, 315.)

Accordingly, we find no contractual obligation was assumed by the lessor, nor was any placed on him by the statute which afforded the lessee the right to make repairs of the nature involved herein, and to offset the same against rent due.

The determination of the Appellate Term, affirming the final order and judgment of the Municipal Court in favor of the landlord, should be affirmed, with costs and disbursements to the respondent.

MARTIN, P. J., GLENNON, DORE and COHN, JJ., concur.

Determination unanimously affirmed, with costs and disbursements.