FOLEY ET AL. *v.* BLAIR & CO., INC., ET AL.

No. 72–1154. Argued November 12, 1973—
Decided December 5, 1973

*Leo H. Raines* argued the cause and filed a brief for petitioners.

*Harvey R. Miller* argued the cause for respondents. With him on the brief were *Charles Seligson, Michael L. Cook,* and *Donald J. Zoeller.*

PER CURIAM.

Blair & Co., Inc., was a member of the New York Stock Exchange, engaged in the general brokerage and commission business. In the early summer of 1970, as the result of operating losses and a shrinkage of capital,

Blair began a program of self-liquidation, which involved the transfer of customer accounts to other broker-dealers and the delivery of securities to customers so requesting. Blair apparently believed that its resources were sufficient to allow it to discharge its obligations to all customers and general creditors through this program. In September 1970, however, Blair concluded that successful implementation of this program might require the assistance of a Special Trust Fund which the New York Stock Exchange had established in 1964 to avoid bankruptcy of member firms.[1]

Consequently, on September 21, 1970, Blair entered into an agreement with the New York Stock Exchange, whereby the trustees of the special fund would make loans and guarantees to protect Blair's customers against loss. The agreement provided that the first such loan, guarantee, or advance by the fund would give the New York Stock Exchange the power to appoint a Liquidator of its own choosing to manage Blair's affairs. The powers of the Liquidator were set forth in the agreement.[2]

---

[1] The Special Trust Fund is authorized by the Constitution of the New York Stock Exchange, Art. XIX, § 1.

[2] Paragraph VIII of the agreement provided:

"Immediately following his appointment by the Exchange, the Liquidator shall take control of the business and property of the Corporation for the purpose of liquidating the business of the Corporation and shall proceed as follows in connection with the liquidation:

"i.) he shall promptly take such steps as he may deem practicable to reduce the Corporation's operating expenses and to dispose of the Corporation's salable assets;

"ii.) he shall have power to retain independent public accountants, consultants, counsel and other agents and assistants and shall have power to augment and reduce or eliminate the staff of the Corporation;

"iii.) he shall, as soon as practicable, assert and collect or settle all claims and rights of the Corporation;

On September 25, 1970, the trustees made an initial advance of $1,000, which triggered the appointment of respondent Patrick E. Scorese as Liquidator. Any plans for further advances or loans were terminated four days later, however, when the petitioners, holders of subordinated debentures of Blair, filed an involuntary petition in bankruptcy against Blair in the United States District Court for the Southern District of New York. *Inter alia,* the petition alleged that the appointment of the Liquidator constituted an act of bankruptcy under § 3a (5) of the Bankruptcy Act, 11 U. S. C. § 21 (a)(5). That section makes it an act of bankruptcy if any person

"(5) while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property."

Concluding that Blair's consent to the appointment of the Liquidator in fact constituted this fifth act of bankruptcy, the Referee adjudicated Blair an involuntary bankrupt. The District Court denied a petition to review his order. On appeal, however, a divided panel of the Court of Appeals for the Second Circuit reversed, reasoning that the Liquidator was not a "receiver or

"iv.) he shall pay any claim against the Corporation considered by him to be a valid claim of any customer of the Corporation;

"v.) he shall take such other steps as he deems necessary or appropriate to liquidate the business of the Corporation.

"It is agreed that consistent with the duty of the Liquidator to effect a fair and orderly liquidation of the business of the Corporation to enable prompt settlement with its customers, the Liquidator shall act in accordance with what he deems to be good business practice."

On the same date that this agreement was signed, Blair executed a second instrument that more specifically delineated the powers of the Liquidator, who was described as "the true and lawful attorney and agent of and for the Corporation [Blair]."

trustee" within the statutory definition. 471 F. 2d 178. We granted the writ of certiorari, 411 U. S. 930, in order to resolve this issue of seeming importance in the administration of the Bankruptcy Act, and oral argument was heard on November 12, 1973.

The respondents have suggested, however, that we should not decide the merits of the controversy, because the present circumstances of Blair & Co. render the case moot. The suggestion is premised on a series of events following the filing of the original involuntary petition. On April 15, 1971, two days after the Referee had granted the petitioners' motion for summary judgment on the issue of whether Blair had committed the fifth act of bankruptcy, Blair filed a petition for relief under Chapter XI of the Bankruptcy Act, pursuant to § 321 of the Act, 11 U. S. C. § 721.[3] On May 18, 1971, the Referee entered an order pursuant to § 325 of the Act, 11 U. S. C. § 725, staying ordinary bankruptcy proceedings under Chapters I–VII pending the determination of the Chapter XI petition.

On May 26, 1971, Blair filed with the District Court its proposed arrangement with its creditors under Chapter XI. On September 27, 1971, the bankruptcy court found that the proposed arrangement had been accepted in writing by the requisite majority in number and amount of Blair's creditors, in accordance with §§ 336 (4) and 362 of the Act, 11 U. S. C. §§ 736 (4), 762.[4] Shortly thereafter on October 4, 1971, the petitioners moved in the District Court to dismiss the Chapter XI proceedings. This motion was not acted upon until February 16, 1973, after the Court of Appeals had reversed the adjudication of Blair as an involuntary bankrupt; on that date,

---

[3] The actual order adjudging Blair a bankrupt was not issued until April 27, 1971.

[4] The September 27 finding was an oral one, made in open court. Written findings to the same effect were filed on December 27, 1971.

the motion was denied. On June 12, 1973, the District Court denied a petition for review of that order. On October 2, 1973, while the present case was awaiting argument in this Court, the bankruptcy court entered an order confirming the arrangement proposed by Blair under Chapter XI. Apparently, no appeal was taken from the order of confirmation.

In light of the confirmation of the Chapter XI arrangement, the respondents suggest that this case no longer presents a live controversy. They rely upon § 371 of the Act, 11 U. S. C. § 771, which provides that confirmation of an arrangement "shall discharge a debtor from all his unsecured debts and liabilities provided for by the arrangement," and argue that the petitioners thus no longer have any monetary stake in resolution of the controversy over whether the fifth act of bankruptcy was committed. See generally 9 W. Collier, Bankruptcy ¶¶ 9.32, 9.33 (14th ed. 1972). The respondents also argue that the original adjudication of bankruptcy is irrelevant to the present situation, since § 322 of the Act, 11 U. S. C. § 722, does not make the pendency of bankruptcy proceedings a prerequisite to the filing of a petition for relief under Chapter XI.

While the issue of mootness was briefed and argued before this Court, it was not treated in the opinion of the Court of Appeals, no doubt because the final confirmation order was not entered by the District Court until well after the appellate court had issued its judgment. Under these circumstances, we think it appropriate that the Court of Appeals have the opportunity to consider the mootness issue in the first instance. In reviewing the question of mootness, the Court of Appeals should consider the effect of § 64a (1) of the Act, 11 U. S. C. § 104 (a) (1). *Inter alia,* that section provides that "one reasonable attorney's fee" for the services rendered to

petitioning creditors in involuntary cases shall be treated as a priority debt in bankruptcy proceedings, payable out of the estate in advance of distribution of any dividends to creditors. Section 64 is made applicable to § 321 Chapter XI proceedings by § 302 of the Act, 11 U. S. C. § 702, and thus might allow the treatment of at least some of the petitioners' counsel fees as a priority expense. See 8 W. Collier, Bankruptcy ¶ 5.33 [3.1] and n. 25 (14th ed. 1972); see also *Reading Co.* v. *Brown,* 391 U. S. 471, 475.[5]

For the reasons stated above, we vacate the judgment of the Court of Appeals, and remand the case to that court to consider whether it has now become moot.

*It is so ordered.*

---

[5] While the effect of § 64a (1) upon the issue of mootness was discussed at oral argument, it was not the subject of briefing by either of the parties.