**In the Matter of KENNISE DIVERSI-FIED CORP., Debtor.**

**Bankruptcy No. 83 B 10612 (PBA).**

United States Bankruptcy Court, S.D. New York.

Oct. 21, 1983.

Oswald Silvera, New York City, for Kennise Diversified Corp.

Department of Housing Preservation and Development City of New York, Community Services Section, New York City; Marjorie B. Liburd, Howard Arenz, New York City, of counsel.

Dazivedo Watson, Pro Se, Adam Clayton Powell Jr. Associates.

### DECISION AND ORDER ON MOTION FOR ORDER DIRECTING TURNOVER

PRUDENCE B. ABRAM, Bankruptcy Judge:

Kennise Diversified Corp. ("Kennise") filed a Chapter 11 petition on April 18, 1983. Kennise's sole asset is the ownership, free and clear of any mortgages, of the land and building at 2299 7th Avenue, New York City (the "Building"). The Building has 23 single room apartments sharing bathroom facilities located in the public hallways.

There are three ground floor commercial spaces. Robert Epps is the sole shareholder of Kennise. Mr. Epps has kidney disease, is on dialysis and currently uses a wheelchair to get around.

Approximately a week prior to the filing of the Chapter 11 petition, a 7A administrator was appointed for the Building by the Civil Court of the City of New York, Housing Part (the "Civil Court"). The appointment was made pursuant to the authority provided by Article 7A of the New York Real Property Actions and Proceedings Law ("NYRPAPL"), N.Y.Real Prop.Acts § 769 *et seq.* (McKinney's 1979) on the petition of the Commissioner of the Department of Housing Preservation and Development ("HPD") of the City of New York ("City"). NYRPAPL Article 7A permits a special proceeding with respect to a multiple dwelling for the purpose of obtaining "a judgment directing the deposit of rents into court and their use for the purpose of remedying conditions dangerous to life, health and safety...." NYRPAPL § 769(1). For a discussion of the factual background to the enactment of Article 7A *see Note, Rent Strike Legislation—New York's Solution to Landlord-Tenant Conflicts,* 40 St. John's L.Rev. 253 (1966). *See also Kahn v. Riverside Syndicate, Inc.,* 34 A.D.2d 515, 516, 308 N.Y.S.2d 65, 66 (1st Dept.1970) ("The legislative intent looks to relief in cases of unusual circumstances and neglect by a landlord.") Article 7A has been held to be a valid exercise of the police power, to be constitutional, and to affect and promote the public welfare. *Himmel v. Chase Manhattan Bank,* 47 Misc.2d 93, 262 N.Y.S.2d 515 (1965).

The action may be commenced either by one-third or more of the tenants, or by the Commissioner of HPD as the commissioner of the department of the City of New York charged with enforcement of the housing maintenance code. NYRPAPL § 770(1).

A petition commencing a proceeding under Article 7A must:

"1. Allege material facts showing that there exists in such dwelling or any part thereof one or more of the following: a lack of heat or of running water or of light or electricity or of adequate sewage disposal facilities, or any other condition dangerous to life, health or safety, which has existed for five days, or an infestation of rodents or course of conduct by the owner or his agents of harassment, illegal eviction, continued deprivation of services or other acts dangerous to life, health or safety." NYRPAPL § 772.

It is a sufficient defense to a 7A proceeding if the owner establishes:

"a. The condition or conditions alleged in the petition did not in fact exist or that such condition or conditions have been removed or remedied; or

b. Such condition or conditions has been caused by a petitioning tenant or tenants or members of the family or families of such petitioner or petitioners or of their guests or by other residents of the dwelling or their families or guests; or

Any tenant or resident of the dwelling has refused entry to the owner or his agent to a portion of the premises for the purpose of correcting such condition or conditions." NYRPAPL § 775.

The court must enter final judgment either (a) dismissing the petition, if defective, or a defense is sustained or (b) directing that rents be deposited with an administrator, that the rents be used to the extent necessary to remedy the conditions alleged in the petition and upon completion of the work, and that any remaining surplus be turned over to the owner together with a complete accounting. NYRPAPL § 776. The court is authorized to appoint an administrator and specify the scope of his authority within the statutory parameters. NYRPAPL § 778(1). The Administrator is statutorily directed to dispose of the rents and other monies deposited with him in accordance with the following order of priority:

"(a) Payment in full for all of the work specified in the judgment. Until all of the work specified in the judg-

ment has been completed and payment for such work has been made, no other disbursements shall be permitted, except for fuel bills, fire and liability insurance and bills for ordinary repairs and maintenance.

(b) Payment of a reasonable amount for the services of such administrator.

(c) Payment of outstanding real property tax liens claimed by the City of New York.

(d) Payment of outstanding emergency repair liens filed and recorded by the City of New York.

(e) Payment to the owner of any surplus remaining after payments of items (a) through (d) of this subsection have been made." NYRPAPL § 778(1).

The court must require the administrator to keep written accounts itemizing receipts and expenditures, which are open to inspection by the owner and certain other persons. Upon motion the court or the owner may require a presentation or settlement of accounts. NYRPAPL § 779.

On April 12, 1983, a final judgment was entered which appointed Dazivedo Watson ("Watson" or the "7A Administrator") as the administrator for the Building and specified his duties.

It is apparent that one of the major reasons Mr. Epps caused the Chapter 11 petition to be filed was that he believed it would result in the automatic ouster of the 7A Administrator. Early in this case the court refused to sign an *ex parte* order directing turnover of the property to the debtor in possession. Thereafter Kennise was unsuccessful in various efforts in the Civil Court aimed at obtaining the ouster of the 7A Administrator.[1] After failing in an attempt to regain physical possession of the Building through changing the locks, Kennise brought on a motion in late August 1983 to cite the City of New York and the attorney responsible for the 7A proceedings for contempt for violating the automatic stay provided by Bankruptcy Code § 362, 11 U.S.C. § 362. The court denied that motion on the basis that the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power is specifically excepted from the operation of the automatic stay by virtue of Bankruptcy Code § 362(b)(4), 11 U.S.C. § 362(b)(4).[2]

The court also denied a motion made by the United States Trustee under the provisions of Bankruptcy Code § 305, 11 U.S.C. § 305 to have the court abstain entirely. It was suggested that the debtor in possession would have to bring on a turnover motion directed to both the City of New York and the 7A Administrator to test its right to the return of the Building. That motion was brought on and a trial was held on September 1 and September 15, 1983. The City of New York has vigorously opposed the turnover, arguing that it is inappropriate both on the particular facts of this case and as a matter of general policy. The 7A Administrator appeared at both hearings without counsel and took no position on the matter.

The City of New York submitted a lengthy affirmation in opposition to the

---

1. These efforts seem to have been directed at procedural deficiencies in the 7A Administrator's appointment arising out of the Civil Court's refusal to let a person who was not an attorney, who was not an officer or shareholder of Kennise and the basis of whose authority to act for Kennise was unknown appear for Kennise on the return date of the 7A petition. It does not appear that any application has been made to the Civil Court to have the 7A Administrator discharged on the grounds that he had completed the repairs or that the owner ought to be permitted to make the repairs.

2. The exception reads:

"(b) The filing of a petition * * * does not operate as a stay

\*        \*        \*        \*        \*        \*

(4) Under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory powers."

A literal reading of the exception would require that the government unit be enforcing only its own laws. The City of New York, in utilizing Article 7A, NYRPAPL, a procedural remedy afforded by state law, is enforcing the City's own housing regulations.

turnover motion. The affirmation outlines the prior litigations involving the Building and attaches copies of various orders entered. These orders include an order entered in February 1982 finding Kennise and Mr. Epps in civil contempt of a prior order requiring the provision of adequate heat and hot water. Photocopies of the City's computerized records of violations which also show emergency repairs by the City prior to the 7A Administrator's appointment of approximately $14,000. That report also reflects that the real estate taxes are twelve quarters in arrears. Kennise has not challenged the accuracy of the exhibits to the City of New York's affirmation, or indeed to the factual statements in the affirmation.

The 7A Administrator testified that when he went to collect rents, which average $150 per residential unit per month, only five persons admitted to legal tenancy. He has since secured an additional ten tenants. Apparently, a number of units in the building had been vandalized and he stated that he has used rent and deposit moneys to fix up units for rental. A major ground for his appointment had been a lack of heat and hot water, as well as inoperative plumbing, and apparently the Building now has hot water and plumbing. The condition of the heating system was not discussed at trial, presumably because the 7A Administrator's appointment coincided with warmer weather. The order of appointment required Mr. Watson to obtain a fidelity bond of $5,000, within 30 days. NYRPAPL § 778(3) (Bond required unless court dispenses with requirement for good cause.) However, it appears that Mr. Watson did not procure a bond until July. Although the 7A Administrator testified that he had filed monthly reports he did not have them with him in court. Kennise caused a search to be made of the court files and was able to locate only one report. One of the tenants in the Building testified both as to conditions prior to and after Mr. Watson's appointment. This witness testified to total inoperability of the public sanitary facilities, complete lack of hot water and other serious conditions in the Building in April 1983 and

earlier. The witness stated that conditions in the Building have improved since Mr. Watson's appointment.

Exactly what went wrong with the management of the Building prior to the 7A Administrator's appointment is unclear. It appears from all of the testimony and documents submitted, including the testimony of Mr. Epps, that Mr. Epps' control of the Building since he acquired it in June 1980 has been less than complete. In a matter of months after he acquired the Building Mr. Epps became unable to collect the rents. This may have been at least partially a product of the fact that he insisted that rents be paid by money order rather than in cash. Mr. Epps testified that he has collected an aggregate of only some $5,000 or so in rents during his ownership of the Building although the theoretical annual rent roll is over $35,000.

Mr. Epps testified that he bought the Building for $75,000 and that he believes it to be worth $155,000. Prior to his purchase, the building had apparently been operated for a number of years without any major problems. Mr. Epps became seriously ill within months of the purchase and was hospitalized for various periods. A major and long-time commercial tenant ceased operating in the building and a dispute arose over the ownership of the fixtures in the store premises. Mr. Epps testified that he tried to *regain control* through dispossession actions against non-rent paying tenants on the grounds they were squatters and had the city marshal evict some tenants. Mr. Epps testified that there were only two legal tenants at the time Mr. Watson was appointed. Mr. Epps has indicated his willingness to make an investment of monies in the Building.

Mr. Epps has suggested that since his appointment Mr. Watson has engaged in various illegal conduct and has rented the commercial space to undesirables. In light of the potentially criminal nature of the allegations made and because Mr. Watson was not represented by counsel, the court restricted questioning of Mr. Watson as to alleged improprieties. Although the court

makes no finding as to the existence or non-existence of improprieties by Mr. Watson, the court has considered Mr. Epps' allegations in rendering its decision.

Con Edison is supplying electrical service to the Building as a result of a preliminary injunction obtained over a year ago by a tenant. Mr. Epps is emphatic that Kennise has never entered into a contract with Con Edison for electric service for the Building. Con Edison is owed over $40,000 and it appears that some of the commercial tenants may have illegally tapped into the residential meter.

Kennise listed only one creditor on its original schedules, the City of New York for real estate taxes and repair liens in the amount of $35,000.[3] These taxes cover a period going back to Mr. Epps' acquisition of the building. In February 1983 Mr. Epps entered into some kind of settlement arrangement respecting the payment of the real estate taxes under which he made one payment. No causal relationship was shown to exist between the real estate settlement and the 7A petition.

The court concludes that the turnover application must be denied as no adequate grounds have been shown to warrant interference in the City of New York's enforcement of its police and regulatory powers through the means of proceeding under Article 7A, NYRPAPL.

## DISCUSSION

This case presents a basic question of bankruptcy administration: is the debtor-in-possession entitled to a turnover of its property in the possession of an administra-tor appointed to correct serious housing code violations? On reflection it is apparent that merely directing a turnover by the 7A Administrator to Kennise, without more, would be insufficient and that an injunction against the continuation or commencement of this or a new 7A proceeding by the City of New York would be required to make the turnover effective. Thus, rather than start with consideration of the turnover provisions of Bankruptcy Code § 543, the court has approached the matter from the perspective whether such an injunction should be issued.

This court has previously had occasion to consider the scope of Bankruptcy Code § 362(b)(4) in another context and has found that the exception is to be narrowly interpreted. *See In re Revere Copper and Brass, Inc.,* 29 B.R. 584 (Bkrtcy.S.D.N.Y. 1983), *aff'd* 32 B.R. 725 (D.C.S.D.N.Y.1983) *appeal docketed* No. 83–5053 (2d Cir. Sept. 26, 1983). *See also In re IDH Realty, Inc.,* 16 B.R. 55 (Bkrtcy.E.D.N.Y.1981) (Stay exception limited to police powers urgently needed to protect public health and welfare). In Revere the court was confronted with an environmental enforcement action based on pre-petition violations of the Federal Clean Water Act brought by a citizens' group. The debtor alleged the action was stayed by Bankruptcy Code § 362(a) and the citizens' group asserted that it was not as it was excepted by Bankruptcy Code § 362(b)(4) or 28 U.S.C. § 959. Although the key basis of the court's holding that the action was stayed was that the § 362(b)(4) exception applied only to governmental actions,[4] the court had occasion to consider

---

**3.** On September 19, 1983, Mr. Epps filed an amendment to the schedules adding himself as a creditor in the amount of $12,000 for various advances.

**4.** Thus the citizens' group was automatically stayed although an identical action in which the government was a plaintiff would not have been. This distinction is not irrational when viewed in light of the power of the court to vacate the automatic stay and to stay actions excepted from the automatic stay. Thus, had the tenants commenced the Article 7A proceeding, this court could have modified the automatic stay so as to permit the action to contin-ue. Likewise, the court clearly has the power to enjoin the continuation of the action even though not automatically stayed by virtue of Bankruptcy Code § 105, 11 U.S.C. § 105.

"The court has ample other powers to stay actions not covered by the automatic stay. * * * There are some actions, enumerated in the exceptions, that generally should not be stayed automatically upon the commencement of the case, for reasons of either policy or practicality. Thus, the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed." H.R.Rep. No. 95–

the interrelationship of Bankruptcy Code § 362(b)(4) and 28 U.S.C. § 959, which allows certain post-petition suits. The court declined to permit the citizens' suit to continue under 28 U.S.C. § 959 on the basis that the conduct complained of was rooted in the pre-petition period.

■ The Article 7A proceeding here is obviously rooted in pre-petition conduct since it was commenced prior to the Chapter 11. However, the governmental action exception to the automatic stay does not turn on whether the police or regulatory power is exercised with respect to pre or post-petition conduct. Rather the exception concerns itself with the nature of any enforcement judgment obtained. Thus, the exception to the automatic stay only permits:

"the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power". 11 U.S.C. § 362(b)(5).

This court is of the view that an Article 7A judgment is not a money judgment since it seeks to enforce the landlord's continuing obligation to comply with the housing laws with respect to provision of essential services. Therefore its enforcement is permitted under Bankruptcy Code § 362(b)(5).

Although the conditions that form the basis of the Kennise 7A petition here are pre-petition, the court is warranted in light of the past history of the Building in concluding that a reasonable likelihood exists that serious conditions in the Building affecting public health and welfare would have continued indefinitely into the future and into the debtor in possession period. Thus, it is necessary to consider 28 U.S.C. § 959 as an alternative justification for refusing an injunction against enforcement of the 7A judgment. The provisions of 28 U.S.C. § 959, which clearly require the

debtor in possession to comply with the housing laws in operating its property, are as follows:

"(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

(b) * * * [A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do so if in possession thereof."

Bankruptcy Code § 362(b)(4) and 28 U.S.C. § 959 form a smooth continuum and make it apparent that Kennise as debtor in possession must operate its Building according to the dictates of non-bankruptcy law that would apply if there were no Chapter 11 case. This court sees no reason to substitute the bankruptcy court itself for the Civil Court as the enforcement forum, which has special expertise in these matters, particularly in light of Kennise's history with the Building.[5] That the Civil Court is not backlogged and is able to act expeditiously has been shown in this case by its actions since the Chapter 11 petition was filed.

595 95th Cong. 1st Sess. 342 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6298.

**5.** Indeed it is questionable whether this court can act as an enforcement forum in light of the

policy expressed by 28 U.S.C. § 1479 that civil actions by a governmental unit to enforce such government unit's police or regulatory powers are not removable to the bankruptcy court.

Were the City of New York and Kennise the only interested parties to this motion, the discussion might properly end here. However, they are not. The court must also contend with Mr. Watson, the 7A Administrator, who, although subject to court supervision, is not a government employee. Is he under a duty to turnover the Building to Kennise and to account to this court even if the City of New York is not subject to the automatic stay? A first reading of Bankruptcy Code §§ 542 and 543 may suggest this illogical result. A careful reading of these sections leads to the conclusion that turnover is not required.

Bankruptcy Code § 543, 11 U.S.C. § 543, provides that a "custodian" with knowledge of the commencement of the case is to deliver the property to the debtor in possession. However, the court may deny the turnover under Bankruptcy Code § 543(d) if "the interests of creditors, and, if the debtor is not insolvent, of equity security holders, would be better served by permitting a custodian to continue in possession, custody, or control of such property." [6] "Custodian" is a defined term and means

"(A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

"(B) assignee under a general assignment for the benefit of the debtor's creditors; or

"(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of

enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors." Bankruptcy Code § 101(10), 11 U.S.C. § 101(10).

The legislative history states:
"Paragraph (10) defines 'custodian'. There is no similar definition in current law. It is defined to facilitate drafting, and *means a prepetition liquidator of the debtor's property,* such as an assignee for the benefit of creditors, a receiver of the debtor's property, or a liquidator or administrator of the debtor's property. The definition of custodian to include a receiver or trustee is descriptive, and not meant to be limited to court officers with those titles. The definition is intended to include other officers of the court if their functions are substantially similar to those of a receiver or trustee." H.R. No. 95–595, 95th Cong. 1st Sess. 310 (1977), U.S.Code Cong. & Admin.News 1978, p. 6267. (Emphasis added).

This court concludes that the 7A Administrator is not a custodian as that term is defined for the reason that a 7A Administrator's responsibilities to creditors are merely incidental to his obligation to act in the landlord's stead to correct the conditions inimical to public health and safety alleged in the petition. The 7A Administrator's purpose is to cure housing violations. He collects rents so that they may be applied to this end. The 7A Administrator's actions are aimed not at a pre-petition liqui-

**6.** Because of its finding that the 7A Administrator is not a custodian, the court need not reach the apparent conflict between Bankruptcy Code § 543(d), on the one hand, and Bankruptcy Code § 362(b)(4) and (5) and 28 U.S.C. § 959, on the other. Bankruptcy Code § 543(d) directs the court to consider the interests of creditors, and if the debtor is not insolvent, of equity security holders, in determining whether to direct turnover. The definition of creditor, Bankruptcy Code § 101(9), 11 U.S.C. § 101(9), states that it means the holder of a claim that arose prior to the filing of the petition. "Claim" is extremely broadly defined in Bankruptcy Code § 101(4), 11 U.S.C. § 101(4), and includes a right to payment or the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment.

It is problematic whether this test enables the court to give due regard to the interests of the City of New York in enforcing its police and regulatory powers or of the public in preserving the housing stock. Although existing tenants may be creditors, a proposition open to debate, prospective tenants are not. Indeed tenants historically have had no right to make repairs and recover the cost from the landlord, apart from any right provided by statute. *Emigrant Industrial Sav. Bank v. One Hundred Eight West Forty Ninth Street Corp.,* 255 A.D. 570, 8 N.Y.S.2d 354 (1st Dept.1938), *aff'd* 280 N.Y. 791, 21 N.E.2d 620 (1939); *Garcia v. Freeland Realty, Inc.,* 63 Misc.2d 937, 314 N.Y.S.2d 215 (1970). Nor is the interest of the City of New York readily susceptible to analysis as the claim of a creditor.

dation of the debtor's property or even at protecting creditors' rights but rather at preserving the housing stock and correcting conditions dangerous to public health, safety and welfare. Any debtor-creditor relationship arising out of the relationship of landlord and tenant is not material to the 7A petition. Nor is the 7A proceeding concerned with the rights of lien creditors as is made clear by the statutory provision that the appointment of a receiver in a mortgage foreclosure action does not affect the duties of the administrator. NYRPAPL § 778(5). *See Genuth v. First Division Avenue Realty Corp.,* 88 Misc.2d 586, 589–90, 387 N.Y.S.2d 793, 796 (1976); *McGovern v. 310 Riverside Corp.,* 49 A.D.2d 949, 374 N.Y. S.2d 137 (2d Dept.1975).

No cases under the Bankruptcy Code construing the term "custodian" in a similar fact situation have been found. *Cf. In re Metropolitan Adjustment Bureau,* 22 B.R. 67, 9 B.C.D. 445 (Bkrtcy.B.A.P.Cal. 9th Cir. 1982) (Issue not considered as raised for first time on appeal.) Cases under the former Bankruptcy Act look, as is suggested in the legislative history of the Code quoted above, at the duties of the person, not his mere title. *See, e.g., Illinois v. Campbell,* 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348 (1946) (Receiver to enforce statutory lien for unemployment contribution); *Emil v. Hanley,* 318 U.S. 515, 63 S.Ct. 687, 87 L.Ed. 954 (1943); *Blair & Co., Inc. v. Foley,* 471 F.2d 178, 181–82 (2d Cir.1972), *vacated and remanded as moot* 414 U.S. 212, 94 S.Ct. 405, 38 L.Ed.2d 422 (1973) (a mere agent, even with extensive powers to liquidate, not a receiver since nothing prevents a creditor from pursuing its ordinary remedies.)

■ The holding that the 7A Administrator is not a custodian precludes application of Bankruptcy Code § 543 to compel turnover; turnover can thus be directed, if at all, only under Bankruptcy Code § 542. Under Bankruptcy Code § 542(a), turnover is required only of property the debtor in possession may use, sell or lease under Bankruptcy Code § 363, 11 U.S.C. § 363. The judgment in the Article 7A proceeding deprived the debtor of the right to use the rents until the violations were corrected and the statutory payments made. The rents are "cash collateral" in which another party has an interest and their use is not permitted under Bankruptcy Code § 363(c)(2), without either consent or an order of the court. This court has not previously granted an appropriate order. No consent has been given. An order of the court would require a finding of adequate protection. Bankruptcy Code §§ 363(c) and 361. No adequate protection has been shown. *Compare U.S. v. Whiting Pools, Inc.,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (IRS required by Bankruptcy Code § 542(a) to turn over property seized pre-petition under a tax lien subject to Bankruptcy Code § 363(e)'s requirement of adequate protection.) Turnover is therefore not required under the circumstances and the various provisions of the Bankruptcy Code are indeed in harmony.

■ The provisions of the Bankruptcy Code do not and are not intended to provide an automatic mechanism for relieving property owners of the unpleasant effects of valid local laws embodying police and regulatory provisions. *See In re Lawson Burich Associates, Inc.,* 31 B.R. 604 (D.C.S.D.N.Y. 1983) *appeal docketed* No. 83–5041 (2d Cir. August 3, 1983) (district court affirmed bankruptcy court's refusal to enjoin state action to terminate nursing home receivership). There has been no showing that the City of New York was motivated by bad faith in commencing the Article 7A proceedings. *See Matter of National Hospital & Institutional Builders Co.,* 658 F.2d 39 (2d Cir.1981) (Bankruptcy Court has power to thwart bad faith frustration of federal bankruptcy policy.) There has been no showing in this case of circumstances warranting extraordinary relief. Appropriate circumstances might include the existence of a substantial public interest other than that embodied in the housing laws or a demonstration that the state courts were so backlogged as to preclude effectively the availability of state court relief to the detriment of creditors and equity security hold-

ers. Neither of these situations is present in this case. There is only one scheduled non-insider creditor. The 7A Administrator's actions are subject to state court supervision. Improprieties or illegalities in his administration, if any, can be handled by the appointing court or other appropriate authority.

The bankruptcy court is the court of last resort for financially troubled debtors. As the court remains unpersuaded that this Chapter 11 must necessarily be unsuccessful or that Kennise is not in need of financial rehabilitation, the motion of the City of New York to dismiss the Chapter 11 must be denied.

The motion of Kennise for turnover of the Building is denied. The motion of the City of New York to dismiss the Chapter 11 is denied at this time.

SO ORDERED.