**In re Robert PORTER, Debtor.**

**Bankruptcy No. 83–05014–H1–5.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

June 11, 1984.

Betty Purvis, Asst. County Atty., Mary Madigan, Asst. City Atty., Houston, Tex., for state of Tex. and city of Houston.

Murray L. Lieberman, Houston, Tex., for debtor.

## MEMORANDUM OPINION

MANUEL D. LEAL, Bankruptcy Judge.

Robert Porter, debtor, is the part owner and lessor of a building located in Houston, Texas. The building was leased to a business known as The Stone Fox. The State of Texas and the City of Houston, claiming that prostitution was being allowed on the premises, brought a public nuisance civil action in state court against The Stone Fox. It sought to abate the nuisance of prostitution, and to enjoin all persons connected with the premises from maintaining such nuisance. Robert Porter, joined as a defendant in the state action, disclaimed any interest in The Stone Fox.

On November 28, 1983 the 127th Judicial District Court of the State of Texas commenced consideration of the application of the plaintiffs, the State of Texas (State) and the City of Houston (City), for a temporary injunction against all defendants pursuant to Arts. 4664 [1] and 4667 [2] Tex.Rev.

---

**1.** Art. 4664 provides:

Any hotel, rooming house or boarding house, country club, garage, rent car stand or other place to which the public commonly resort for board or lodging or commonly congregate for business or pleasure, where intoxicating liquors are kept, possessed, sold, manufactured, bartered or given away, or where intoxicating liquors are furnished to minors or to students of an educational institution, or where persons ha-

bitually resort for the purpose of prostitution or to gamble as prohibited by the Penal Code, is hereby declared to be a common nuisance. Any person who knowingly maintains such a place is guilty of maintaining a nuisance.

**2.** Art. 4667 provides in pertinent part:

(a) The habitual use, actual, threatened or contemplated, of any premises, place or building or part thereof, for any of the following uses

Civ.Stats.Ann. While the hearing was being conducted, Robert Porter filed a petition for reorganization in the United States Bankruptcy Court under Chapter 11 of 11 U.S.C., *et seq.* The debtor's attorney then apprised the state court of the filing and of the automatic stay provisions of 11 U.S.C. § 362.

The state court heard arguments as to whether the application was stayed by 11 U.S.C. § 362 or whether it was exempt from the stay by 11 U.S.C. § 362(b)(4) and (5). The state court concluded that the plaintiff's application was excepted from the automatic stay and resumed the hearing.

On November 29, 1983, the state court declared The Stone Fox a public nuisance according to the aforementioned state statutes. The state court enjoined all defendants, their agents, and those persons in active concert or participation with them from allowing or permitting the premises to be used or occupied by prostitutes for the purposes of prostitution, promotion of prostitution, or aggravated promotion of prostitution. It further ordered, pursuant to Art. 4666 [3] Tex.Rev.Civ.Stat.Ann., that the premises be padlocked for one year or until a final hearing, whichever came first. The state court, pursuant to state law, allowed The Stone Fox and all defendants the option of reopening the premises on the condition that they abate the nuisance and post a five thousand dollar bond as assurance of compliance. The order granting a

temporary injunction was subsequently signed on December 19, 1983.

The debtor came before this court on December 5, 1983 as owner and lessor of the building. It reaches this court on the debtor's motion to dissolve the padlocking order and to enforce the automatic stay provisions of 11 U.S.C. § 362. The debtor maintains that the filing of the bankruptcy petition operated as a stay of all proceedings against the debtor, or, the property of the debtor's estate, including collection efforts, harrassment and interference with the debtor's assets.

Porter claims that the actions by the State and City do not fall under the scope of the exception provided by 11 U.S.C. § 362(b)(4) or (5), allowing a governmental unit to act in pursuit of its police or regulatory powers. Porter states that the exception was designed to prevent or stop violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws. The debtor concludes that the state proceeding is not within (b)(4) and therefore the actions taken in state court are in violation of the automatic stay and *void ab initio.*

In the alternative, Porter argues that the state proceeding would be stayed even if within the § 362(b)(4) exception because the state court's padlock order, in effect, is a seizure of property of the estate and violative of the automatic stay.

Porter further maintains that the injunction against the defendants, individually, is

shall constitute a public nuisance and shall be enjoined at the suit of either the State or any citizen thereof:

> (2) For the promotion, or aggravated promotion of prostitution, or compelling prostitution; ...

**3.** Art. 4666 provides:
Whenever the Attorney General, or the district or county attorney has reliable information that such a nuisance exists, either of them shall file suit in the name of this State in the county where the nuisance is alleged to exist against whoever maintains such nuisance to abate and enjoin the same. If judgment be in favor of the State, then judgment shall be rendered abating said nuisance and enjoining the defendants from maintaining the same, and ordering that

said house be closed for one year from the date of said judgment, unless the defendant in said court, or the owner, tenant or lessee of said property make bond payable to the State at the county seat of the county where such nuisance is alleged to exist, in the penal sum of not less than one thousand nor more than five thousand dollars, with sufficient sureties to be approved by the judge trying the case, conditioned that the acts prohibited in this law shall not be done or permitted to be done in said house. On violation of any condition of such bond, the whole sum may be recovered as a penalty in the name and for the State in the county where such conditions are violated, all such suits to be brought by the district or county attorney of such county.

sufficient to accord the plaintiffs all of the requested relief. Porter urges that the padlocking of the premises bars him from utilizing the premises and, therefore, collecting any rents. The debtor maintains that these rents are necessary for the funding of a plan of reorganization and the providing of adequate protection to creditors. Finally, Porter claims that the posting of the bond would create a preference in favor of the State over the debtor's other creditors.

The City's position is that its action was not an independent attack by a creditor during the pendency of a Chapter 11 proceeding. Rather, its exercise was the use of the exceptions provided in (b)(4) and (5). The City claims that this court has no authority to enjoin the state court according to 28 U.S.C. § 1481 and, therefore, the padlocking order must stand. In response to the debtor's claim that the injunction without the padlock or bond is sufficient, the City states that one without the other is useless. The City claims that the bond is only forfeited in cases of violation of the injunction. Therefore, they maintain that a lessee wishing to operate a legitimate business on the premises could post the bond without fear of forfeiture.

■■■ The filing of a petition in bankruptcy under 11 U.S.C. serves to vest the Bankruptcy Court with exclusive jurisdiction of the property of the estate. 28 U.S.C. § 1471. Contemporaneously, the filing serves as the invocation of the automatic stay. The automatic stay provision of the Code, 11 U.S.C. § 362, serves a dual role of enabling the debtor to obtain a fresh start and affording creditors equitable shares of their debtor's assets or the assurance of satisfaction or security for their claims on equitable terms. Kennedy, *Automatic Stays Under the New Bankruptcy Law*, 12 U.Mich.J.L.Ref. 1, 61 (1978). It provides "a 'defensive' weapon in the limited arsenal of a debtor against the phalanx of creditors efforts." *In Re Purdy*, 16 B.R. 860, 867 (N.D.Ga.1981). The imposition of the automatic stay is not to be taken lightly nor to be dismissed cavalierly. *In Re Saypol*, 31 B.R. 796, 798–99 (Bkrtcy., S.D.N.Y.1983).

However, not all acts are stayed. There are several statutory exceptions. Among the exceptions are proceedings or actions by governmental units to enforce their police or regulatory power.

Sections 362(b)(4) and (5) of the Bankruptcy Code provide as follows:

(b) The filing of a petition under section 301, 302 or 303 of this title does not operate as a stay ...

(4) under subsection (a)(1) of this section of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental units police or regulatory power;

(5) under subsection (a)(2) of this section, of enforcement of a judgment other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental units police or regulatory power;

The legislative history of § 362(b)(4) further provides:

Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

S.Rep. 95–989, 95th Cong., 2d Sess. 52, *reprinted in* [1978] *U.S.Code Cong. & Admin.News*, 5787, 5838; H.R.Rep. No. 595, 95th Cong., 1st Sess. 343, *reprinted in* [1978] *U.S.Code Cong. & Admin.News*, 5963, 6299.

This section is intended to be given a narrow construction in order to permit governmental units to pursue action to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

Remarks of Rep. Don Edwards, 124 Cong. Rec. H 11089 (1978), *reprinted in* [1978]

U.S.Code Cong. & Admin.News, 6436, 6444–45; Remarks of Sen. Dennis Deconcini, 124 Cong.Rec. S17406 (1978), *reprinted in* [1978] *U.S.Code Cong. & Admin.News,* 6505, 6513.

Case law has probed the parameters of the governmental exception and further enunciated the distinction between a governmental unit acting in its own pecuniary interest and the government acting in furtherance of its police or regulatory laws.

Governmental units have been permitted to initiate or continue proceedings despite bankruptcy filings on a number of occasions. *Commodity Futures Trading Commission v. Incomco, Inc.,* 649 F.2d 128 (2nd Cir.1981) (CFTC allowed access to debtor's books and records); *Securities and Exchange Commission v. First Financial Group of Texas,* 645 F.2d 429 (5th Cir.1981) (appointment of a federal receiver permitted); *National Labor Relations Board v. Evans Plumbing Co.,* 639 F.2d 291 (5th Cir.1981) (ordered judgment and reinstatement of fired employee); *In re Herr,* 28 B.R. 465 (D.Me.1983) (allows for the fixing of penalties, but not satisfaction of judgment); *Donovan v. TMC Industries, LTD.,* 20 B.R. 997 (N.D.Ga.1982) (enjoined the sale or transport of goods); *In re Thomassen,* 15 B.R. 907 (9th Cir.Bkrtcy. App.1981) (State of California allowed to examine the conduct of the debtor-physician); *In re Tauscher,* 7 B.R. 918 (Bkrtcy. E.D.Wisc.1981) (Secretary of Labor allowed to assess penalties for violation of child labor laws).

Likewise, government authorities have been stayed in instances where courts have determined that the purpose of the action was to incur an advantage as to a financial obligation. *State of Missouri v. United States Bankruptcy Court, etc.,* 647 F.2d 768 (8th Cir.1981) (statute's objective aimed at the pecuniary interest of grain storage firms); *In re Sampson,* 17 B.R. 528 (D.Conn.1982) (statute is directed at the debtor's financial obligations); *In re Adana Mortgage Bankers, Inc.,* 12 B.R. 989 (N.D.Ga.1980) (objectives not embraced by police or regulatory powers are not excepted); *In re Joe DeLisi Fruit Co.,* 11 B.R. 694 (D.Minn.1981) (statute designed to financially protect a certain class of individuals not within the police or regulatory powers).

Finally, in recent decisions courts have restrained the attempted enforcement of money judgments through the statutory exceptions by application of (b)(5). *In re William Lee Kovacs,* 681 F.2d 454 (6th Cir.1982) (securing a court order is tantamount to enforcement of money judgment); *Matter of Penn Terra, Ltd.,* 24 B.R. 427 (Bkrtcy.W.D.Pa.1982) (mandatory injunction is an attempt to enforce a money judgment); *In re King Memorial Hospital, Inc.,* 4 B.R. 704 (Bkrtcy.S.D.Fla.1980) (certificate of need laws enacted to stimulate economical expansion).

The question of a debtor being deprived of rental income was recently addressed in *Matter of Kennise Diversified Corporation,* 34 B.R. 237 (Bkrtcy.S.D.N.Y.1983). In *Kennise,* the debtor's sole asset was a piece of real property and the improvements thereon. Prior to the filing of the debtor's bankruptcy petition, the City of New York obtained the appointment of an administrator of the property and a judgment which required the deposit of rentals into the court, and their use for the purpose of remedying the conditions of the premises. The debtor subsequently filed a motion for turnover of the rentals. The court termed the issue not as a question under § 543, but, rather under § 362(b)(5).

The court determined that application of § 362(b)(4) and (5) "does not turn on whether the police or regulatory power is exercised in respect to pre or post-petition conduct ... but with the nature of any enforcement judgment obtained ...". *Kennise, supra,* at 243. In holding that the governmental authority was not stayed by the filing, the court stated, "the judgment is not a money judgment since it seeks to enforce the landlord's continuing obligation to comply with the housing laws with respect to provision of essential services. Therefore its enforcement is permitted under Bankruptcy Code § 362(b)(5)" *Id.* The court concluded its analysis, "[T]he provisions of the Bankruptcy Code do not and are not intended to provide an automatic

mechanism for relieving property owners of the unpleasant effects of valid local laws embodying police and regulatory provisions. *Id.*, at 245.

The application of *Kennise* to the case at bar warrants a similar conclusion. Here, as there, use of the premises was in violation of state law; here, as there, a governmental unit pursued an action and obtained injunctive relief designed to remedy the violation; and here as there, the debtor was denied the use of what might otherwise be considered property of the estate to ensure compliance with public policy.

In neither case was the debtor stripped of his title or precluded forever from exercising dominion and control of the property. In both instances, the debtor had a choice of methods of compliance; in *Kennise* to make the necessary repairs to conform to the appropriate building code standards, while, in the instant case, the debtor need only tender a five thousand dollar ($5,000) surety bond, as proof of his compliance with the terms of the state court order to abate the nuisance.

This court is of the opinion that the relationship between Robert Porter and the State of Texas is not that of a debtor and creditor. There is no claim that either the State of Texas or the City of Houston extended goods or services to Porter in return for an obligation to pay on credit terms. No contractual or commercial relationship is urged. The judgment obtained in the state court is neither a money judgment nor enforcement of a money judgment. Rather, the state court order served to further the police and regulatory power of the state in an effort to protect the City's citizens from health, safety and public policy violations, namely prostitution.

■ Likewise, the posting of the surety bond cannot logically be deemed a preference on behalf of the City. The bond is redeemable by the debtor upon abatement of the nuisance. It is only subject to forfeiture if the defendants choose to continue the nuisance, once the property is again being utilized. This being the case, the court views the depositing of a bond, not as a preference, but rather, as an asset of the estate which must be included in the schedules of the debtor.

A recent bankruptcy court decision has revived the "purpose" and "effect" rationale of *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). *In re Aegean Fare*, 35 B.R. 923 (Bkrtcy.Mass. 1983). In *Perez*, the Supreme Court adopted the approach that the standard of review must focus not only on the purpose behind state legislation, but also on the effect of the legislation. Previously, state legislatures were able to nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy—other than frustration of the federal objection—that would be tangentially furthered by the purported state law. *Perez, supra*, 402 U.S. at 652, 91 S.Ct. at 1712.

Viewing the state legislation in the case at bar, as to purpose and effect, this court finds that the federal objective and, thus, the Supremacy Clause are not frustrated by its application. The State of Texas has statutorily declared prostitution as being against its public policy. *See generally,* Legislative History of H.B. 20 (1923), H.J. of Tex; 38th Leg., 2nd Sess. (1922). Prostitution promotes not only health and social concerns but many safety violations as well. Prostitution activity disrupts community life and causes innumerable problems within cities and neighborhoods in particular. They function as a catalyst for the degradation of community precepts and civil standards. Arts. 4663 and 4667 are designed to protect the health and safety of the public and go a long way in promoting state public policy. Art. 4666 has not been enacted to serve as an enforcement mechanism with an eye towards the provisions of the Bankruptcy Code. Rather, Art. 4666 is designed to enforce the injunctive relief granted in state court, after full notice and hearing, and as allowed under § 362(b)(5). Its effect is not to enforce a money judgment, but to ensure abatement of a public nuisance, in this case, prostitution.

Further, there is no frustration of the Code, for the estate is being deprived only of the use of the property or the bond, at the debtor's option. This is clearly consist-

ent with the holdings of *In re Canarico Quarries, Inc.*, 466 F.Supp. 1333 (D.P.R. 1979), where the debtor-in-possession was forced to cease the operation of a quarry because of persistent violations of state and federal environmental regulations, and *In re Carmen Alessi*, 12 B.R. 96 (Bkrtcy. M.D.Ill.1981), where a racing license was denied because of unpaid obligations and other improprieties in violation of state statutes and regulations. In both cases, the state action was found *not* to be pecuniary in nature, and no property was taken as a punitive measure. Rather, use of the property was denied for the sake of the community's health and safety. *See also, Colonial Tavern, Inc. v. Byrne*, 420 F.Supp. 44 (D.Mass.1976) (court lacks jurisdiction to enjoin state enforcement of liquor license suspension).

■ Finally, the debtor claims that even if this action falls within the (b)(4) exception, it is stayed because it effects a seizure of property of the estate by way of the padlocking. *Dallas Fort Worth Regional Airport Board v. Braniff Airways, Inc.*, 21 B.R. 181 (Bkrtcy.N.D.Tex.1982). "[T]he precise wording of § 362(b)(4) explicitly creates an exception to the stay imposed under § 362(a)(1). Plaintiff is still subject to § 362(a)(3) which stays 'any act to obtain possession of property of the estate or property form the estate ...' Exceptions to § 362(a)(1) do not operate to permit a seizure of property from the estate without a court order." *Braniff, supra,* at 182.

The *Braniff* court's usage of the words "possession" and "seizure" make it unclear whether it contemplated stripping a debtor of his title to the property or merely denying its usage. "§ 362(a)(3) is designed to prevent dismemberment of the estate. Any distribution of property must be by the trustee after he has had the opportunity to familiarize himself with the various rights and interests involved and with the property available for distribution"; H.R. Rep. 95–595, 95th Cong., 1st Sess. 340–342, *reprinted in* [1978] *U.S.Code Cong. & Admin.News*, 5963, 6298; S.Rep. 95–989, 95th Cong., 2d Sess. 49–51, *reprinted in* [1978] *U.S.Code Cong. & Admin.News;* 5787, 5836.

It is apparent that Congress intended to address the situation where property, of or from the estate, is taken in satisfaction of an obligation, rather than to ensure compliance with public policy provisions. Police or regulatory powers fall within the latter, and any other action does not fall within the statutory exception of (b)(4). It is important to distinguish a fine, a pecuniary penalty imposed by lawful tribunal, *Blacks Law Dictionary* 569 (5th ed. 1979), from a bond, a pledge to ensure performance or compliance, *Id.* at 161. In the instant case, no property of the estate is taken in satisfaction of an obligation. This being the case, and there being no seizure, *Braniff* is inapplicable.

State of Texas and City of Houston, respondents herein, are found to be excepted from the automatic stay as to the facts before this court. The debtor's motion is denied.