In re Crateo, Inc., Bankrupt.

CRATEO, INC., Appellant,

v.

INTERMARK, INC., et al., Appellees.

Nos. 73–3208, 74–2088, 74–2615 and 75–3061.

United States Court of Appeals, Ninth Circuit.

May 27, 1976.

Rehearing Denied June 28, 1976.

Murray Luftig (argued), San Diego, Cal., Arnold L. Kupetz (argued), Los Angeles, Cal., for appellant.

Eric T. Lodge (argued), Luce, Forward, Hamilton & Scripps, San Diego, Cal., for appellees.

## OPINION

Before KOELSCH and GOODWIN, Circuit Judges, and WOLLENBERG,* District Judge.

WOLLENBERG, District Judge:

Crateo, Inc., a California corporation, was in the business of purchasing "sick" companies. Its own health came into question in late summer of 1970, and its creditors initiated involuntary bankruptcy proceedings. After a jury trial on the question of its ability to pay its debts, Crateo was adjudicated a bankrupt. While appeal from that judgment was pending, Crateo requested permission from the trial court to take depositions pursuant to Rule 27(b) of the Federal Rules of Civil Procedure. While its original appeal was still pending, Crateo also filed in the trial court two motions to vacate the adjudication of bankruptcy under Rule 60(b) of the Federal Rules of Civil Procedure. Appeals from the denial of all three post-judgment motions were consolidated with the primary appeal.[1] Finding no merit in any of appellant's arguments, we affirm the adjudication of bankruptcy and decline to remand the case for any further proceedings.

## I. *Adjudication of Bankruptcy*

In the summer of 1970, Crateo elected to wind up its affairs and voluntarily dissolve. On August 31, 1970, it filed a petition for judicial supervision of the winding up process with the Superior Court of the State of California for San Diego County. See California Corporations Code § 4607. On that same day, the Superior Court ordered that notice of the dissolution proceeding be pub-

lished and that all known creditors of Crateo be informed of the petition. In addition, the Superior Court ordered all creditor actions against Crateo enjoined and required all claims against Crateo to be presented in the dissolution proceedings. See California Corporations Code §§ 4608, 4616. Shortly thereafter, a creditors' petition was filed in the District Court alleging that Crateo had committed the fifth act of bankruptcy as defined by Section 3(a)(5) of the Bankruptcy Act, 11 U.S.C. § 21(a)(5).

In accord with Section 19(a) of the Bankruptcy Act, 11 U.S.C. § 42(a), Crateo requested a jury trial on the question of its insolvency. Prior to that trial, several issues, including the issue of Crateo's insolvency, were referred to the referee in bankruptcy sitting as a special master. The special master's report on the issue of Crateo's insolvency was read to the jury at trial. The jury subsequently found that Crateo was insolvent at the time it filed its petition for dissolution in the state court, and a judgment adjudicating Crateo a bankrupt was entered on August 9, 1973.

### *Appointment of a Receiver or Trustee*

■ The petitioning creditors alleged that Crateo's petition in the state court for judicial supervision of its dissolution amounted to the fifth act of bankruptcy, 11 U.S.C. § 21(a)(5). That section provides, in pertinent part, that:

Acts of bankruptcy by a person shall consist of his having . . . (5) while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property.[2]

California law governing the dissolution of corporations creates a significant change in the status of the corporation and its di-

* Honorable Albert C. Wollenberg, United States District Judge, Northern District of California, sitting by designation.

1. The appeal from the adjudication of bankruptcy is No. 73–3208. The appeal from the denial of permission to take post-judgment

depositions is No. 74–2088. The appeals from the denials of the motions to vacate judgment are Nos. 74–2615 and 75–3061.

2. The definition of "persons" in 11 U.S.C. § 1(23) makes this section applicable to corporations.

rectors. We agree with appellant's creditors and the District Court that the net effect of this change means that Crateo's actions in the state court resulted in the "appointment of a receiver or trustee" within the meaning of 11 U.S.C. § 21(a)(5).

After a petition for dissolution is filed, the board of directors continues to operate the corporation in order to settle its affairs. Cal.Corp.Code § 4800. However, directors may be removed by the superior court for reasons of "dishonesty, misconduct, neglect, or abuse of trust". Cal.Corp.Code § 4614. The court can take such an action on its own initiative, and the normal prerequisite of a shareholder's suit is not required. *Cf.* Cal.Corp.Code § 811.

The duties of the board of directors are also limited once the dissolution proceedings come under judicial supervision. The only business the corporation can carry on is that of winding up. Cal.Corp.Code § 4605. In carrying out this task, the board of directors is invested with extensive powers. Cal.Corp.Code § 4801. The powers of the board of directors, however, are not unlimited. The state court has the specific power to determine the manner in which claims are to be presented and settled and how shareholders' rights are to be determined. The court has the power to oversee the complete dissolution process and discharge the directors from their obligations after the process is completed. Cal.Corp.Code §§ 4608–11, 4617. In addition, the court has the general power to "make orders and adjudge as to any and all matters concerning the winding up of the affairs of the corporation." Cal.Corp.Code § 4607.

In winding up the corporation's affairs, the first duty of the board of directors is to satisfy the corporation's debts and liabilities. Cal.Corp.Code § 5000. In satisfying these obligations, the directors' powers under Cal.Corp.Code § 4801 are circumscribed by the overall supervisory power of the Superior Court under Cal.Corp.Code § 4607. If the directors do not settle the corporation's obligations properly, the court has the duty to vacate the directors' actions and make the appropriate settlement itself. *In re Trinity Tractor Co.,* 3 Cal.App.3d 428, 440–441, 83 Cal.Rptr. 783, 791–792 (1970).

In addition, Crateo's creditors could no longer pursue their normal legal remedies against Crateo once the Superior Court accepted Crateo's petition for judicial supervision of its dissolution proceedings. Actions already begun were stayed by the Superior Court's order. Whether or not legal title to the corporation's assets passed into the possession of the board of directors became irrelevant because creditors could sue neither entity.

There was no need for the board of directors to be formally appointed trustees or to formally possess legal title to the corporation's assets. The effect of Crateo's actions in the Superior Court was to require its board of directors, under court supervision, to act as trustees.[3] In determining whether a corporate dissolution under state law is the equivalent of the fifth act of bankruptcy, "it is the end result that counts". *In re Bonnie Classics,* 116 F.Supp. 646, 648 (S.D.N.Y.1953).[4]

■ Not every corporate petition for dissolution under the California Corporations Code will necessarily result in an involuntary bankruptcy. Under 11 U.S.C. § 21(a)(5), the creditors must also show that the debtor was "insolvent or unable to pay his debts as they mature". However, if this situation exists, California corporations cannot defeat the operation of the bankruptcy laws by applying for dissolution under Cali-

---

**3.** This result is not changed by the additional possibility that a receiver may be appointed pursuant to California Code of Civil Procedure §§ 564, 565.

**4.** *Blair & Co., Inc. v. Foley,* 471 F.2d 178 (2d Cir. 1972), *vacated and remanded for consideration of mootness,* 414 U.S. 212, 94 S.Ct. 405, 38 L.Ed.2d 422 (1973), is not to the contrary. That case involved a private arrangement between a brokerage firm and the New York Stock Exchange for the appointment of a liquidating agent for the firm. No court was involved in the liquidation process nor did the winding up process force creditors to forego their normal legal remedies. In light of the different factual situation herein, we need not comment further on the *Blair* case.

fornia law. *In re Watts & Sachs,* 190 U.S. 1, 27, 23 S.Ct. 718, 47 L.Ed. 933 (1902). The overly technical approach to the interpretation of 11 U.S.C. § 21(a)(5) urged by Crateo must be rejected.

*Petitioning Creditors*

■ The creditors' petition against Crateo was required by Section 59(b) of the Bankruptcy Act, 11 U.S.C. § 95(b), to be filed by at least "three or more creditors who have provable claims not contingent as to liability". Six petitioning creditors[5] presented evidence before the special master, and Crateo claims that none of them had claims "not contingent as to liability". Examination of the creditors' claims, however, shows that appellant is incorrect.

■ Intermark Investing Inc. was a judgment creditor of Crateo's pursuant to a stipulated judgment entered in a state court prior to the filing of the creditors' petition. Part of the judgment provided that two parcels of property owned by Crateo would be sold and the proceeds of the sale applied to reduce Crateo's debt to Intermark. A dispute arose over the manner in which the properties were to be appraised prior to their sale. This was essentially a dispute over the manner in which the judgment would be satisfied and cannot obscure the fact that Crateo's liability to Intermark had already been fixed. *In re Trimble Co.,* 339 F.2d 838, 844 (3rd Cir. 1964).

■ Under a promissory note to Olympia Business Service, Inc., Crateo was obligated to pay $1200 per month. Since appellant did not make the payments due July 1, 1970, and August 1, 1970, Olympia was properly determined to be a creditor whose claim was not contingent as to liability. There was no need for Olympia to obtain a judgment against Crateo before it could achieve the status of a petitioning creditor under Section 59(b). *Denham v. Shellman Grain Elevator, Inc.,* 444 F.2d 1376, 1380 (5th Cir. 1971). Whether or not Crateo received proper notice so as to accelerate payment of the entire amount remaining on the promissory note is irrelevant because the two monthly installments were definitely due at the time the creditors' petition was filed.

■ General Electric Company held two promissory notes which had fully matured prior to August 31, 1970. Again, there was no need for General Electric to have obtained judgments on these notes in order to satisfy the requirements of Section 59(b). The fact that there was a dispute over Crateo's indebtedness on another separate obligation to General Electric is irrelevant.[6]

*Use of Special Master's Report at Jury Trial*

■ Under Section 19(a) of the Bankruptcy Act, 11 U.S.C. § 42(a), Crateo was entitled to a jury trial "in respect to the question of [its] insolvency".[7] Prior to that trial, the issue of Crateo's insolvency had been referred to the referee in bankruptcy sitting as a special master. The report of the special master was then read to the jury pursuant to Rule 53(e)(3) of the Federal Rules of Civil Procedure. Crateo contends that the procedure followed in this case violated its right to a trial by jury on the question of its insolvency.

■ Crateo first claims that reference to a special master was unwarranted be-

---

5. Two of the original petitioning creditors and four intervening creditors presented evidence before the special master on this question. Under 11 U.S.C. § 95(f), the intervening creditors took on the status of petitioning creditors. *3 Collier on Bankruptcy* ¶ 59.29 (14th ed. 1975).

6. While it would not be helpful to discuss the claims of the three other petitioning creditors, we believe the District Court correctly held that their claims were not contingent as to liability.

7. Although 11 U.S.C. § 42(a) also gives debtors the right to a jury trial on the question of whether they committed an act of bankruptcy, there was no need for a jury trial on that issue in this case. Crateo did not dispute the fact that it had filed a petition for judicial supervision of dissolution in the state court. Crateo only disputed the legal effect that could be attached to its action.

cause the issues were readily understandable by a jury. F.R.C.P. Rule 53(b) provides that "in actions to be tried to a jury, a reference shall be made only when the issues are complicated".[8] The petitioning creditors had alleged that Crateo was bankrupt because it could not pay its debts as they matured. While every claim of this type does not require use of a master, considering Crateo's tangled financial affairs and the duplication of those problems in two subsidiary corporations that had been merged into Crateo three days before the filing of the petition in state court for judicial supervision of dissolution, we believe that there was no abuse of discretion in reference to the special master. Since this was a matter for the district judge's determination in light of his perception of whether the jury would find the issue complicated, Crateo's request to examine the special master on the complexity of the case was properly denied.

■■■ At the trial, the findings of the special master were read to the jury. In providing that these findings are "admissible as evidence" and "may be read to the jury", Rule 53(e)(3) does not require the special master to personally read the findings to the jury. Consequently, contrary to appellant's position, the special master did not have to be made available for cross examination on the procedures used to reach the findings presented to the jury.

■■■ The expert qualifications of the special master were Crateo's primary guarantee that the proper legal standards and procedures were used by the master in determining his findings. In this respect, it is significant that Crateo did not object to the qualifications of the master appointed in this case.[9] At the trial, Crateo was given a

full opportunity to introduce evidence that would contradict the findings of the special master and argue to the jury that the findings were incorrect. The jury was instructed on the role of the special master and the weight to be given to his report, and Crateo did not object to this instruction.

The procedures employed in the trial would not impermissibly interfere with the right to trial by jury guaranteed by the Seventh Amendment. *Ex parte Peterson*, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920); *Burgess v. Williams*, 302 F.2d 91 (4th Cir. 1962). Crateo's statutory right to a jury trial under the Bankruptcy Act gives it no greater rights than those available in civil proceedings governed by the Seventh Amendment. *Diamond Door Co. v. Lane-Stanton Lumber Co.*, 505 F.2d 1199 (9th Cir. 1974). Under all the circumstances of this case, we conclude that Crateo received a fair and proper trial on the question of its insolvency.

*Jury Instructions*

■■■ The petitioning creditors had alleged and were required to prove that Crateo was "unable to pay [its] debts as they mature" when it petitioned for a judicially supervised dissolution in state court. 11 U.S.C. § 21(a)(5). This is the "equity" definition of insolvency. The trial judge's instruction to the jury followed the language of the statute.[10] Crateo objected to this instruction, claiming that the word "debts" is in the plural and therefore the creditor must show the debtor's inability to pay "substantially all" of its debts and not just the debtor's inability to pay "one or two or three" debts.

The words "unable to pay [its] debts as they mature" are contained in a statutory

8. The trial was held in June of 1973. General Order in Bankruptcy No. 37 was in effect at that time and made Rule 53 of the Federal Rules of Civil Procedure applicable to jury trials in bankruptcy cases. *Cf. Diamond Door Co. v. Lane-Stanton Lumber Co.*, 505 F.2d 1199 (9th Cir. 1974). The Federal Rules of Civil Procedure with respect to masters now apply to bankruptcy proceedings because of Bankruptcy Rule 513.

9. Crateo was not prejudiced by the fact that the special master happened to be a federal bankruptcy referee.

10. The jury was instructed that "considering only those items which you have concluded are both debts and are mature, you must decide whether Crateo, Inc. had the ability to pay these debts on August 31, 1970".

context which necessitates rejection of Crateo's argument. A debtor commits the fifth act of bankruptcy when he is unable to pay his debts as they mature *and* a receiver or trustee is appointed to take charge of his property.[11] In that situation, there is a good possibility that some creditors may not be able to recover their claims on an equitable basis with other creditors unless they are able to invoke the protections of the Bankruptcy Act. Without those protections, the fact that some, or even most, of the creditors could be paid is of little consolation to those who cannot be paid. Adoption of Crateo's position would be completely contrary to the increasing amount of protection afforded to creditors by successive revisions of 11 U.S.C. § 21(a)(5).[12] In addition, Crateo's proposed test would be so indefinite as to be unworkable. The trial judge properly declined to modify his instructions.

## II. Motions to Vacate the Adjudication of Bankruptcy

■ Approximately eight months after judgment was entered adjudicating Crateo to be a bankrupt, and while the appeal from the judgment was pending, Crateo filed a motion in the District Court to vacate the judgment under Rule 60(b) of the Federal Rules of Civil Procedure. Because of the pending appeal, the District Court had no jurisdiction to enter an order under Rule 60(b). The most the District Court could do was to either indicate that it would "entertain" such a motion or indicate that it would grant such a motion. If appellant had received such an indication, its next step would have been to apply to this Court for a remand. *Canadian Ingersoll-Rand Co. v. Peterson Products,* 350 F.2d 18, 27–28 (9th Cir. 1965).

■ In this case, however, the District Court found that it was inappropriate to either grant or entertain the Rule 60(b) motion. This was only a procedural ruling

and not a final determination of the merits of the Rule 60(b) motion. Such an order is not appealable. Crateo's "appeal" from the District Court's order must therefore be considered as a motion for remand of the case for consideration of the Rule 60(b) motion. *Weiss v. Hunna,* 312 F.2d 711, 713 (2d Cir. 1963) *cert. denied,* 374 U.S. 753, 83 S.Ct. 1920, 10 L.Ed.2d 1073 (1963); *Canadian Ingersoll-Rand Co. v. Peterson Products, supra,* 350 F.2d at 27 n. 16. We decline to order such a remand.

The basis of Crateo's motion was an attack upon the validity of a judgment from the United States District Court for the Southern District of Texas in favor of the Southern National Bank of Houston and against Crateo. See *Southern National Bank of Houston v. Tri Financial Corporation,* 317 F.Supp. 1173 (S.D.Tex.1970), *affirmed sub nom., Southern National Bank of Houston v. Crateo, Inc.,* 458 F.2d 688 (5th Cir. 1972). This judgment was introduced as evidence tending to prove that Crateo was unable to pay its debts as they matured and comprised a large proportion of Crateo's unpaid debts. In its Rule 60(b) motion, Crateo claimed that the Texas judgment was obtained by fraud and should not have been considered at Crateo's bankruptcy trial.

The District Court in Texas had determined that Tri Financial, a predecessor of Crateo, was obligated to purchase a promissory note from the bank. While that decision was on appeal to the Fifth Circuit, the bank brought an action against one of the signers of the note in the United States District Court for the District of Nevada. After the defendant in the Nevada action raised the claim that her signature on the note had been forged, the bank decided not to prosecute its suit and the case was dismissed. The Fifth Circuit's decision came after the events in Nevada.

■ The bank, however, was not a party in Crateo's bankruptcy proceeding. The

---

11. Thus, contrary to the implications in Crateo's argument, debtors are not thrown into bankruptcy merely because they cannot pay a few small debts at a particular moment.

12. See *1 Collier on Bankruptcy* ¶ 3.501 (14th ed. 1974).

Texas judgment was merely introduced into evidence by other creditors of Crateo as tending to show Crateo was unable to pay its debts as they matured. There is no indication that any of those petitioning creditors knew of any possible irregularities connected with the evidence. Despite Crateo's protestations of fraud in the obtaining of the Texas judgment, its Rule 60(b) motion in this case cannot be considered as falling under the third clause of that section because the bank's actions cannot be charged to any adverse party in the bankruptcy proceeding.[13]

The jurisdiction of the District Court in Texas over the parties in *Southern National Bank of Houston v. Tri Financial Corporation, supra,* was not challenged in the bankruptcy proceedings, and the petitioning creditors were entitled to rely on the judgment's presumptive validity. Crateo's post-judgment collateral attack on the Texas judgment was brought in the wrong forum.[14]

In its Rule 60(b) motion, Crateo also claimed that the bank had received some payments on the promissory note and that Crateo's indebtedness to the bank was therefore less than the amount stated in the Texas judgment. Again, the collateral attack on a presumptively valid judgment was brought in the wrong forum.

We also decline to remand the case because of Crateo's second Rule 60(b) motion. All of the pertinent information that is the basis for this motion should have been known to Crateo well before the 1973 trial on the issue of its insolvency. There is

no excuse for waiting over two years after entry of judgment before filing this motion.[15]

### III. *Perpetuation of Testimony Pending Appeal*

While the appeal from the adjudication of bankruptcy was pending, Crateo requested permission, pursuant to Rule 27(b) of the Federal Rules of Civil Procedure, to depose an officer of the Southern National Bank of Houston. This testimony was allegedly needed to investigate the circumstances surrounding the purported forgery on the promissory note and the satisfaction of the note discussed in part II, *supra.* The order denying Crateo's motion is an appealable order. *Ash v. Cort,* 512 F.2d 909 (3rd Cir. 1975). *Cf. Martin v. Reynolds Metals Corporation,* 297 F.2d 49 (9th Cir. 1961).

On appeal, we must decide whether there was an abuse of discretion by the trial court. *Ash v. Cort, supra.* For the reasons stated previously in part II, *supra,* Crateo could not collaterally attack the Texas judgment. There was, therefore, no reason in this bankruptcy proceeding to take depositions on the subject. Crateo's motion was properly denied.

The judgment in No. 73–3208 and the order in No. 74–2088 are affirmed. The appeals in Nos. 74–2615 and 75–3061 are dismissed. Considering Nos. 74–2615 and 75–3061 as motions to remand to permit the district judge to consider appellant's Rule 60(b) motions, the motions are denied.

---

**13.** Assuming that the inability to collect from one of the alleged signers of the promissory note eliminated Tri Financial's obligation to purchase the note from the bank, any possible fraudulent conduct in this situation would consist of the bank not informing the Fifth Circuit of the invalidity of the obligation before it affirmed the judgment of the District Court in Texas.

**14.** The bank's Nevada action terminated in June of 1971, and the trial on the issue of Crateo's insolvency did not take place until June of 1973. Crateo first raised this issue in early 1974 when it moved for an order perpetu-

ating testimony pending appeal. No satisfactory explanation of the delay in producing evidence of the Nevada action is provided. The possibility that it may have been too late to petition either the Fifth Circuit or the District Court in Texas to set aside their judgments does not allow Crateo to collaterally attack the judgment in this proceeding.

**15.** Many of the arguments raised by Crateo with respect to these two Rule 60(b) motions are irrelevant to the motions and are attempts to reargue the primary appeal. This is not the proper function of a Rule 60(b) motion.