982 F.2d 1356
 24 Fed.R.Serv.3d 983, 20 Media L. Rep. 2147
 Charles Rodman CAMPBELL, Petitioner-Appellant,
v.
James BLODGETT, Superintendent of Washington State
Penitentiary, Walla Walla, Washington; Kenneth
Eikenberry, Attorney General of the
State of Washington,
Respondents-Appellees.
 No. 92-37024.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 4, 1993.
As Amended Jan. 25, 1993.
 
 Before: REINHARDT, HALL, and LEAVY, Circuit Judges.
 
 
 1
 Petitioner Charles Campbell appeals from the district court's order denying his motion for leave to videotape the execution of Westley Allan Dodd, who is scheduled to be executed by hanging at 12:01 a.m. January 5, 1993. This appeal raises two issues: whether the district court had jurisdiction to consider Campbell's motion, and whether it abused its discretion in denying it. We affirm the district court's finding of jurisdiction, and we find no abuse of discretion. Accordingly, we affirm in all respects.
 
 
 2
 * Jurisdiction
 
 
 3
 In opposition to Campbell's motion in the district court, Respondents (hereinafter the State) argued that the district court lacked jurisdiction to consider the motion because the filing of the notice of appeal in the underlying case[1] divested the district court of jurisdiction over all claims in this matter. The State does not renew this argument on appeal. Nevertheless, we must consider our own jurisdiction, which hinges on that of the district court.
 
 
 4
 Rule 6 of the Rules Governing Section 2254 Cases permits habeas petitioners to use the discovery procedures available under the Federal Rules of Civil Procedure if judicial leave is granted. 28 U.S.C. foll. § 2254 (1988). Rule 27(b) of the Federal Rules of Civil Procedure in turn permits litigants to use discovery procedures pending appeal if judicial leave is granted. Thus, Rule 27(b) creates an exception to the general principle that the filing of the appeal divests the trial court of all authority over a case. Rule 27(b) contemplates that a district court with existing subject matter jurisdiction retains sufficient jurisdiction of a case under appeal to issue an extraordinary discovery order pending that appeal. Accordingly, the district court had jurisdiction under 28 U.S.C. §§ 2241(a) and 2254. The denial or grant of a motion under Rule 27(b) is a final order. Crateo, Inc. v. Intermark, Inc., 536 F.2d 862, 870 (9th Cir.), cert. denied, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976); Ash v. Cort, 512 F.2d 909, 912 (3d Cir.1975). We have jurisdiction under 28 U.S.C. § 1291.II
 
 Standard of Review
 
 5
 The availability of any discovery during a habeas proceeding is committed to the sound discretion of the district court. See 28 U.S.C. foll. § 2254 Rule 6 & adv. comm. note (1988). The availability of discovery pending appeal under Rule 27(b) is also a matter within the court's discretion. Crateo, 536 F.2d at 870. We review the district court's denial of a motion under Fed.R.Civ.Pro.Rule 27(b) for abuse of discretion, under which we will not reverse absent a definite and firm conviction that the district court has committed a clear error of judgment.
 
 III
 Merits
 
 6
 The district court denied Campbell's motion to videotape the execution after finding that the evidentiary value of the proposed videotape was not sufficiently substantial to meet the standard imposed by Rule 27(b). Rule 27(b) permits a court to order discovery pending appeal if it finds that the perpetuation of evidence is "proper to avoid a failure or delay of justice" in the event of further proceedings in the district court. Fed.R.Civ.P. 27(b). The district court found that the evidentiary value of the tape was doubtful, while the infringement upon comity concerns and privacy interests was serious. Consequently, in the exercise of its discretion, it declined to order the State to permit Campbell to videotape Dodd's execution. We find no abuse of discretion in the court's determination.
 
 A. Comity Concerns
 
 7
 The district court perceived serious questions of comity in the notion of forcing the State to contravene its established policy against recording executions and ordering it to allow a particular person to attend and record an execution. The dissent argues that the district court abused its discretion because comity is not an appropriate concern in this context; federal habeas corpus relief by its very nature impinges heavily on state interests. The dissent thus discounts this value as of no importance. To the contrary, it is precisely because federal habeas corpus does infringe so greatly on state comity interests that any expansion or extension of those proceedings requires strong justification indeed.
 
 
 8
 The dissent poses the issue as whether the state's bar on attendance at executions may be permitted to interfere with a federal constitutional right. This is incorrect in at least two respects. First, it is the act of recording the execution and the fact of the recording's existence, and not mere attendance by an additional witness, that is at issue. Second, and more importantly, there simply is no federal right, constitutional or otherwise, to discovery in habeas proceedings as a general matter. See Harris v. Nelson, 394 U.S. 286, 296, 89 S.Ct. 1082, 1089, 22 L.Ed.2d 281 (1969) (adoption of federal rules of civil procedure was not intended to make discovery provisions of rules available in habeas corpus proceedings).
 
 
 9
 Contrary to the dissent's assertion, Campbell is not "only asking that one additional person be permitted to attend." Campbell asks that we order the State to open to his agent the most serious of all state legal proceedings against its citizens, the taking of a human life. He asks that we order the State to permit him to create a permanent audiovisual record of the event, to engage in conduct during the event necessary to allow the creation of the video and audiotapes, and to make whatever technical arrangements (placement of cameras, microphones, etc.) necessary to do the job in a meaningful way. In this situation comity is not only an appropriate concern, it is a highly weighty one. Had there been a greater showing of the relevance of the evidence sought, perhaps comity alone would not be sufficient reason to deny the motion, but that is not the case, as discussed in part C. We do not find the court's concern with state interests to be an abuse of discretion.
 
 B. Privacy Interests
 
 10
 The district court also found that Campbell's request affected the condemned prisoner Dodd's privacy rights, because there could be no guarantee against the intentional or inadvertent release of the recording to the public. Unlike the condemned prisoner in the Harris execution, on which Campbell and the dissent so heavily rely, Dodd has not consented to the videotaping of his execution.[2] See Fierro v. Gomez, No. C-92-1482 MHP (N.D.Cal. April 21, 1992) (Order granting motion to videotape execution of Robert Alton Harris). The absence of Dodd's consent to the recording of his execution puts this case in a different realm.
 
 
 11
 The dissent responds that the incremental infringement on Dodd's privacy is infinitesimal because of the number of witnesses already permitted to view the execution. We reject this assertion. Mere presence at and observation of an event is an intrusion of a different magnitude than the creation of a permanent audiovisual record of that event. Regardless how we shape an order and regardless what contempt sanctions we may threaten, we simply cannot guarantee that no duplicate will be made or that this tape will not appear on CNN someday. We note also that Dodd's privacy and dignity during the actual execution may be affected by the placement of cameras and microphones. We find no abuse of discretion in the district court's consideration of this factor.
 
 C. Relevance
 
 12
 Finally, the district court found that the evidentiary value of the recording was dubious and that it was unnecessary for an informed ruling on whether hanging constitutes cruel and unusual punishment in violation of the Eighth Amendment. The dissent argues that the evidence need only be relevant, not necessary. This misstates the law. Campbell must demonstrate "good cause" to merit any discovery whatsoever under Rule 6 of the rules governing habeas petitions. See 28 U.S.C. foll. § 2254 Rule 6 (1988). To merit discovery in a case that is already pending on appeal, he must demonstrate that this discovery is "proper to avoid a failure or delay of justice." Fed.R.Civ.Pro. 27(b). In other words, Campbell must show that the loss of this evidence could result in a failure of justice.
 
 
 13
 Neither Campbell nor the dissent explain what it is that a videotape of the hanging would show at an evidentiary hearing, if one were ordered. There was evidence in the record to show that no relevant evidence would be obtained by videotaping the execution. Campbell fails to identify what it is that would be learned by watching Dodd's execution or how it would shed any light on whether hanging violates the Eighth Amendment. Both Campbell and the dissent offer numerous conclusory statements about irreplaceable evidence and best evidence, but evidence of what?
 
 
 14
 So far as we can determine, the relevant issues in Campbell's claim of cruel and unusual punishment are: 1) how much time elapses before unconsciousness; 2) how much time elapses before death; 3) cause of death or unconsciousness; and 4) sensations of pain and suffering before unconsciousness. At best, a videotape of the execution could shed light on the duration issues, but so too could a witness or timing device. Campbell's expert disputes the reliability of witness testimony, but with respect to this one objectively identifiable and measurable element, we think memory distortions should not be a material problem. A videotape could not shed light on the third issue, nor on the fourth. The proposed videotape would not show the impact of the physical instrument (the rope) as it affects the body, because of the hood worn by the condemned extending over the face, neck and chest; nor would it show the location of the physical injuries, as they are either internal or hidden behind the hood. Any conclusions about pain and suffering that could be drawn from the condition of the visible body during hanging can be drawn as well or better from examination of the remains without the execution hood post mortem. We are left to conclude that Campbell desires the evidence for its sheer emotional impact.
 
 
 15
 Accordingly, we find no abuse of discretion in the district court's conclusion that Campbell failed to show this evidence is sufficiently important to compel the district court to exercise its discretion in only one way. While the lack of probative value would alone be sufficient to sustain the ruling, in combination with the district court's other concerns we can find no abuse of discretion.
 
 
 16
 AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 17
 I dissent. I would reverse the district court order denying Charles Rodham Campbell leave to videotape the State of Washington's hanging of Westley Allan Dodd.
 
 
 18
 Dodd's hanging will be the first official hanging in this country since 1963. Campbell too has been sentenced to death by hanging by the State of Washington. He seeks to prove that hanging is cruel and unusual in violation of the eighth amendment. In approximately three weeks, our en banc court will consider the question whether he is entitled to an evidentiary hearing on his eighth amendment claim. Our affirmance of the district court's order deprives Campbell of the best evidence that he could present at such a hearing. I would grant Campbell permission to videotape the execution, but would require that the tape be immediately deposited in the district court, to be used only in the event that Campbell is awarded an evidentiary hearing on his eighth amendment claim. I would also require that the camera be focused exclusively on Dodd and that the faces and bodies of prison officials not be taped.[1]
 
 
 19
 In my opinion, the district court's order denying Campbell the opportunity to preserve evidence crucial to a fair adjudication of his eighth amendment claim constitutes a gross abuse of discretion and a violation of Campbell's right to due process of law. The reasons given by the district judge for banning the taping are wholly without merit. In my opinion, there is not a colorable argument among them.
 
 
 20
 The district judge reached his conclusion by considering three factors: the state's comity interest in enforcing its policy regarding attendance at and recording of executions, Dodd's privacy interests, and the relevance of the evidence which Campbell seeks to preserve. I will discuss these factors in turn.
 
 
 21
 I. Comity.
 
 
 22
 Ordinary comity interests are of less concern where a defendant's constitutional rights are at stake. All habeas corpus proceedings infringe at least to some degree on state comity interests, and writs of habeas corpus infringe on those interests to a substantial degree. To maximize comity and minimize federal court intrusion into the state criminal justice system, we have adopted certain procedural rules, including the requirement that defendants must exhaust their constitutional claims in state court and that we must defer to certain types of findings by state courts. No suggestion has been made that Campbell's motion to record Dodd's hanging implicates or violates any of these rules or procedural requirements.
 
 
 23
 There is no true comity issue here. The question instead is whether a state rule governing attendance at and recording of executions can serve as a bar to a petitioner's attempt to obtain critical evidence in support of his constitutional claim. When a state rule is alleged to interfere with a federal constitutional right, comity is not an appropriate concern. The state rule either unlawfully burdens the federal right or it doesn't.--The district court's reliance on comity concerns rests on an erroneous understanding of the law and therefore constitutes an abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).
 
 
 24
 Moreover, the district court clearly erred in holding that the state's interest in enforcing its policy regarding attendance at and recording of executions (either standing alone or when coupled with Dodd's alleged privacy interest) outweighs Campbell's interest in preserving relevant evidence. The evidence which Campbell seeks to preserve is obviously relevant to his eighth amendment challenge to hanging, while the infringement on the state policy interests is minimal at most. Under these circumstances, the state's interest in its policy must give way, as a matter of law, to the defendant's interest in enforcing his constitutional rights.
 
 
 25
 Initially, the district court erred with respect to its assessment of the nature and magnitude of the state's interest. The state's interest in denying access to Dodd's execution is expressed only in Department of Corrections guidelines which the state itself does not follow. The guidelines provide that no one other than staff, the prosecuting attorney, the sentencing judge, and up to twelve media representatives may attend an execution. See WSP410.500 at 7. In Dodd's case, however, the state is permitting the family of Dodd's victims to attend his hanging. Apparently, the state is willing to ignore its guidelines for its own purposes but not for the purposes of others, no matter how legitimate their cause. Specifically the state is unwilling to permit an exception to its rules when doing so would serve to preserve evidence important to the fair resolution of a vital constitutional question affecting a number of present and future defendants, including persons it intends to hang.
 
 
 26
 Campbell is only asking that one additional person be permitted to attend the execution. The burden imposed by permitting this additional person to attend would be minimal even if the state consistently adhered to its policy of admitting only 12 media representatives in addition to the judge and prosecutor, but it is non-existent in light of the state's decision to ignore its policy and admit the victims' family members.
 
 
 27
 The guidelines also prohibit the recording or filming of executions. The only justification asserted for this prohibition is the need to conceal the identity of those conducting the execution. See Affidavit of Tana Wood. This is a valid state interest, but it is not in conflict with the order used recently in connection with the recording of the Harris execution and proposed by Campbell for use here. Under the proposed order, the taping of prison staff would be prohibited, the camera would be focused exclusively on Dodd, and the videotape would be immediately deposited with the court so that any accidental taping of prison staff could be promptly cured. Neither the state nor the district court explains why these safeguards are not sufficient to vindicate the state's interest in concealing the identity of its employees. The state is thus left with no articulated basis for refusing to let Campbell preserve the events of the hanging for use as evidence.
 
 
 28
 In short, the comity argument has no merit whatsoever.
 
 
 29
 II. Dodd's Privacy Interests.
 
 
 30
 The district judge noted simply that "the proposal to tape Mr. Dodd's execution impacts Mr. Dodd's privacy rights." In reaching this rather blunt conclusion, the district judge failed to consider the safeguards which Campbell proposed in order to accommodate whatever privacy interests Dodd may have. I conclude that in this case the privacy factor cannot as a matter of law outweigh Campbell's interest in preserving the evidence. There are several points worth mentioning here, each independent of the other, and each sufficient to refute the district court's reliance on Dodd's privacy rights:
 
 
 31
 1. The infringement on Dodd's privacy that would result from the proposed order is infinitesimal. Campbell asks only that the events of the hanging be preserved on videotape and deposited with the court, to be used only with the court's permission in the event that an evidentiary hearing is ordered on his eighth amendment challenge to hanging. The state has already given permission for a substantial number of persons--media representatives, the prosecutor, the sentencing judge, and the victims' families--to witness the execution and to describe the event graphically in the press and on television. Dodd's privacy is already invaded to a substantial extent by that act of the state. If Campbell's proposed order is granted, the number of persons who will ultimately see the execution will increase only by the number of persons present at a federal court hearing, plus the cameraman. Under these circumstances, the minimal incremental infringement on Dodd's privacy is far outweighed by the importance of the evidence that Campbell seeks to preserve.[2] In fact, the district judge apparently recognized this point, since he appears to have based his privacy analysis exclusively on the theory that there is no way to insure that the tape would not be made public.
 
 
 32
 2. The only privacy concern expressly relied on by the district court is clearly unfounded. As noted, the sole basis for that concern appears to be the court's fear that the proposed order would be violated--that the tape would become available to the world at large. There is no rational factual basis for this concern. The United States Courts are capable of assuming jurisdiction over a tape, holding it, and insuring that it is not used unlawfully. It was clearly erroneous for the court to assume as the basis for its ruling that courts cannot or will not perform this function in accordance with their own orders. Thus, the order clearly constituted an abuse of discretion.[3]
 
 
 33
 The majority suggests that there can be no "guarantee" that court orders will not be violated, and speculates that the tape may appear on CNN. There is no guarantee of anything in life, I suppose. But that is hardly a premise on which to ground a serious decision affecting constitutional rights. We do not ordinarily base an important legal conclusion on a fanciful parade of horribles of the type that we are all capable of conjuring up. The majority is wrong to do so here.
 
 
 34
 3. It is both ironic and improper that the state raises Dodd's privacy interests before this court: in prior proceedings, the state has argued, and courts have ruled, that no one but Dodd himself may assert any of his rights, including his right to appeal his conviction or his interest in being free from cruel and unusual punishment. Clearly, then, this must be the case with respect to Dodd's privacy rights as well. See, e.g., Starrels v. CIR, 304 F.2d 574 (9th Cir.1962) (right of privacy is personal and cannot ordinarily be asserted by family members). Thus, it is highly questionable that Dodd's privacy rights may be placed at issue here or may be considered at all in this proceeding.
 
 
 35
 4. To the extent that Dodd does have a minimal interest in preventing an incremental increase in the number of witnesses to his execution, and to the extent that his interest is cognizable in this proceeding, the appropriate course for the district court to have followed would have been to order Campbell's motion served on Dodd so that he would have had an opportunity to object. While ordering such service might have been desirable, we do not now have sufficient time to correct any error the district court may have made in that respect.[4] The district court having failed to order service on Dodd, the greater harm now would be to deprive Campbell of his right to a full and fair hearing on his constitutional claim. In any event, I note that there is no indication that Dodd objects to Campbell's request and there is no reason to assume that someone who has waived all of his interests (save his statutorily mandated appeal to the intermediate state court) would wish to assert his privacy rights. In capital punishment proceedings, both direct and ancillary, interested persons fax communications to the court up until the moment of execution. Dodd has not been heard from in this case up to this moment--less than eight hours before his execution.
 
 
 36
 5. I want to emphasize that my conclusion is not based primarily on the incremental increase aspect of the privacy argument. A tape that is used only in a court proceeding constitutes a minimal privacy invasion. The district court did not disagree with this point. It based its privacy argument solely on the clearly erroneous factual assumption that the courts could not ensure the security of the tape. Thus, if the letter filed with the court by Campbell's counsel this morning is accurate and the state intends to hang a curtain between Dodd and the witnesses preventing them from seeing the actual hanging, my conclusion regarding the privacy issue would be unchanged. In any event, the state has advised us that Campbell's counsel is incorrect and that the witnesses will be able to see the actual execution.[5]
 
 
 37
 For all these reasons, I conclude that the court clearly erred in denying the motion on the basis of Dodd's privacy interests.
 
 
 38
 III. Relevance.
 
 
 39
 Here, the district court committed perhaps its clearest legal error. The court found that the evidentiary value of the proposed recording was "dubious at best" because "a recording is not necessary for an informed ruling on the issue of whether execution by hanging offends the constitutional prohibition against cruel and unusual punishment." (emphasis added). The issue is relevance, not necessity. If parties could resist a request to preserve relevant evidence wherever it would be possible to make some type of informed ruling without the evidence in question, the right to preserve evidence would be narrowed almost out of existence. This is clearly wrong.
 
 
 40
 The district court also committed clear error in assessing the importance of the proposed recording. No one has been lawfully hanged in this country since 1963. A videotape of a state-conducted hanging is obviously the best possible evidence of whether or not hanging constitutes cruel and unusual punishment. Consider the videotape of the Rodney King beating. No one could seriously suggest that that tape was of "dubious" evidentiary value. The tape was played over and over at the trial, at various speeds, and gave the jurors a far more accurate picture of the event than was given by the conflicting stories offered by various witnesses. (Whether the jury rendered the correct verdict is a different matter. At least the jurors had the best evidence before them.)
 
 
 41
 Witnesses to a violent and traumatic event like a vicious beating or a hanging frequently give dramatically different accounts of what occurred. Moreover, witness testimony regarding an actual hanging would probably make a far different impression on a factfinder than would such testimony in combination with a videotape of the actual event. Witnesses principally communicate their impressions with words--imperfect tools that conjure up vastly different images in the minds of different listeners. Videotape is not perfect, but used in combination with testimony, it can dramatically diminish the margin for miscommunication and misperception. Moreover, it can and does serve as a basis for cross-examining witnesses and refreshing their memories. When confronted with a record of the actual event, witnesses often recall matters far more accurately than otherwise.
 
 
 42
 The district judge ignored all of these considerations, as well as other arguments as to why witness testimony is no substitute for videotape in this case. For example, it is not clear that there will be any suitable witnesses. Among the potential witnesses are the victims' family members, the prosecutor, the judge, and the prison staff charged with conducting the execution. For obvious reasons, Campbell should not be compelled to rely on their descriptions of the events. The only other witnesses will be media representatives, who may or may not be willing to testify as a matter of journalistic policy. Moreover, Campbell wishes to present the testimony of medical experts as to the effects of hanging. There is no basis in the record for believing that lay witnesses untrained in medicine will be able to observe and understand the relevant details that a physician could note from witnessing a videotape. Campbell's medical experts should be permitted a fair opportunity to testify based on the best evidence that can be made available as to what occurs during an actual execution. The testimony of the state experts that events such as body-jerking can be misinterpreted supports rather than undermines Campbell's argument that a taped record which can be carefully scrutinized, frame by frame, by experts, provides the best (if not the only reliable) evidence.
 
 
 43
 Because both of the reasons given by the district court for denying the order (comity and Dodd's privacy rights) were based on wholly erroneous legal principles, reversal is required if the proposed videotape has any probative value at all. In this case, not only would the tape have probative value, it would constitute the best and most persuasive evidence on the factual question of what transpires when a person is hanged--the factual question on which Campbell's constitutional claim of cruel and unusual punishment hinges. Thus, our affirmance today deprives Campbell finally and irrevocably of evidence crucial to the determination of his constitutional claim.
 
 
 44
 Any doubt that the relevance of a tape of the hanging would be substantial should be dispelled by considering what would happen if the state already had a videotape of Dodd's hanging in its possession. If Campbell subpoenaed an existing tape for use at an evidentiary hearing, and the state resisted on the ground that the tape was not relevant, the state's attorneys would probably be subject to sanctions. If the state refused to produce the tape, the only legitimate question would be whether it had a substantial interest in withholding it--one sufficient to override Campbell's interests.
 
 
 45
 Denying Campbell the right to record the hanging presents no different issue than denying him access to a tape of the hanging already in the state's possession--unless the act of recording somehow unduly interferes with a substantial state interest (which it doesn't). The question is therefore the same in both cases: has the state presented an overriding reason for denying Campbell the evidence which is under its control--here, the opportunity to obtain and preserve that evidence. Cf. Thomas v. Goldsmith, 979 F.2d 746 (9th Cir.1992) (state is obliged by the due process clause to come forward with evidence in its possession relevant to habeas petitioner's challenge to his conviction). The answer is clear. Although the evidence in question is the best evidence of what actually transpires when the state executes a person by hanging, the state has failed to present anything approaching a substantial interest which would justify denying Campbell the opportunity to obtain that evidence. The only interests the state has asserted are Dodd's privacy rights, which are minimal (and which are not the state's to assert), and its comity interest in a rigid and undeviating adherence to a policy which it does not itself intend to follow in this case.
 
 
 46
 The value of the evidence sought to be preserved is not minimized by the fact that Dodd will be hooded during his execution. A videotape will demonstrate Dodd's body movements, and the mechanical operation--or malfunction--of the state's equipment. It will also provide an additional basis for inferring the force of impact on Dodd's throat. This information would in turn assist medical experts in inferring the amount of time before death and the degree of pain inflicted on Dodd.
 
 
 47
 Finally, the majority's suggestion that Campbell "desires the evidence for its sheer emotional impact" is odd indeed. If the evidence is not probative because a hood conceals all of the execution's dramatic aspects, what sheer emotional impact is there to be feared? None, as I read one part of the majority's opinion. A lot, as I read another. And who does the majority fear will be misled or otherwise adversely affected by a tape that may have great emotional impact? Apparently, the very same district judge whose order they affirm; for, the tape would be used only in a hearing before him--a hearing held without a jury. In fact, it makes little sense to suggest that Campbell wants the tape only for its sheer emotional impact--unless that impact would result from the type of evidence that might cause Judge Coughenour (or an appellate court) to conclude that hanging is indeed cruel or unusual. If the tape would indeed contain such evidence, as well it might, the majority does us all a great disservice in preventing Campbell from recording the hanging.
 
 
 48
 IV. Discovery in Habeas Corpus Proceedings.
 
 
 49
 The majority makes much of the fact that discovery under the Federal Rules of Civil Procedure is available to habeas petitioners for "good cause shown" and that under F.R.C.P.Rule 27, discovery while a case is pending on appeal "is proper to avoid a failure or delay of justice." These requirements make no difference to the disposition of Campbell's motion. Where the best available evidence relevant to a petitioner's constitutional claim will be irretrievably lost without resort to normal discovery procedures, and no appreciable interest weighs against invoking those procedures, the "good cause" requirement is clearly met. It would be a gross abuse of discretion to conclude otherwise.
 
 
 50
 Moreover, the majority's narrow focus on the availability of civil discovery overlooks the due process considerations implicated by the state's deliberate attempt to obstruct Campbell's access to evidence crucial to his constitutional challenge to hanging. As I discussed above, the state must present at least a substantial interest to justify denying a defendant access to such evidence. See Thomas v. Goldsmith, 979 F.2d 746 (9th Cir.1992) (state is obliged by the due process clause to come forward with evidence in its possession relevant to habeas petitioner's challenge to his conviction). It has not done so here.
 
 CONCLUSION
 
 51
 I have no doubt that the district court committed clear error in denying the motion. I would reverse and issue an order along the lines of the Harris order--an order that would fully protect the state's interest in concealing the identity of its employees, would limit the use of the tape to its introduction into evidence at an evidentiary hearing in federal court, and would provide for physical possession of the tape by the federal courts at all other times.
 
 
 52
 I regret that the majority's action will in the end require our court to consider the question of whether hanging is cruel and unusual without the benefit of evidence that would have helped us to make better informed decision. As far as I can see, there is absolutely no principled reason underlying the district court's order. Accordingly, I consider the majority's affirmance of that order most unfortunate.
 
 
 
 [1]
 Campbell v. Blodgett, 978 F.2d 1519 (9th Cir.1992) (Order Granting Rehearing En Banc)
 
 
 [2]
 If Dodd had consented to this procedure, Campbell surely would have informed the Court
 
 
 [1]
 A similar order was granted by the district judge in the Robert Alton Harris case. Harris' recent execution was taped in conformance with that order for use in a class action challenge to the constitutionality of executions by lethal gas
 
 
 [2]
 It is not clear in any event that Dodd's interest in privacy outweighs the public's interest in observing governmental activity. At least there are no authoritative precedents on that question yet. However, we need not face that fundamental issue in this case
 
 
 [3]
 The only legitimate possibility that disclosure would occur is the possibility that a federal court superior to the district court would someday order the tape's release. Unlikely as this may be, it would in any event be improper for the district court to attempt to foreclose a superior court from considering any possible future action
 
 
 [4]
 In any event, even if Dodd had asserted a privacy right, I would, for the reasons set forth in the text, grant Campbell's motion
 
 
 [5]
 The state advises us that the screen will separate Dodd from the witnesses only until the hangman acts. The witnesses will be able to see Dodd's body as soon as it drops