**[NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]**

# United States Court of Appeals
## For the First Circuit

————————————

No. 99-1371

HECTOR R. TUESTA-TORO,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

————————————

Before

Torruella, Chief Judge,

Selya and Lipez, Circuit Judges.

————————————

Allan E. Junker, with whom Frampton, Williams & Little was on brief, for appellant.
Warren Vázquez, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, Jorge E. Vega-Pacheco, Assistant United States Attorney, Chief, Criminal Division, and Nelson Pérez-Sosa, Assistant United States Attorney, were on brief, for appellee.

————————————

July 20, 2000

————————————

**TORRUELLA, Chief Judge.** Héctor Tuesta-Toro appeals the denial of his petition to vacate his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated below, we affirm.

BACKGROUND

**A. Factual Background**

The facts of this case were aptly summarized by this Court in <u>United States</u> v. <u>Tuesta-Toro</u>, 29 F.3d 771, 773 (1st Cir. 1994). We see no need to duplicate that effort. Accordingly, we reiterate our previous recitation of the facts largely verbatim.

On September 2, 1992, after receiving information from a confidential informant ("CI") that petitioner Tuesta-Toro and Carlos Martínez-Díaz were distributing large quantities of cocaine in the San Juan metropolitan area, the United States Drug Enforcement Administration recorded telephone conversations during which Martínez agreed to sell the CI five kilograms of cocaine at $16,500 per kilogram and identified Tuesta-Toro as his source. Martínez in turn spoke with Tuesta-Toro by cellular phone in order to establish the price and quantity of the cocaine to be sold to the CI and the site of the drug transaction.

The next day Martínez advised the CI by phone that a one-kilogram transaction (rather than the five-kilogram transaction discussed the day before) would take place that afternoon, but that Tuesta-Toro did not wish to be seen by the buyer. Martínez

reestablished telephone contact with Tuesta-Toro at 2:40 p.m. En route to the scene of the transaction, Martínez noted that Tuesta-Toro was carrying a gun and more than one kilogram of cocaine. At Tuesta-Toro's instruction, Martínez parked their vehicle so that Tuesta-Toro could witness the drug deal without being observed. Martínez then exited the car and delivered the cocaine to the CI, who was accompanied by an undercover DEA agent. Shortly thereafter, Martínez and Tuesta-Toro were arrested.

### B.  Procedural History

Following his arrest, petitioner Héctor Tuesta-Toro was charged in the United States District Court for the District of Puerto Rico with possession of cocaine with intent to distribute, see 21 U.S.C. § 841(a)(1), carrying a firearm during a drug trafficking offense, see 18 U.S.C. § 924(c)(1), and using a communication facility to facilitate a drug trafficking offense, see 21 U.S.C. § 843(b). Pursuant to a plea agreement, Martínez testified against petitioner at trial. Petitioner was subsequently convicted on all counts and sentenced to 138 months of imprisonment.

On appeal, this Court affirmed the conviction. See generally Tuesta-Toro, 29 F.3d 771. Petitioner filed a petition for rehearing and a request for rehearing en banc. Both were denied. Petitioner then filed a petition for a writ of certiorari, which the Supreme Court denied. See Tuesta-Toro v. United States, 513 U.S. 1132 (1995).

-3-

On April 26, 1995, petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Petitioner raised five claims in his habeas petition, only two of which he now pursues on appeal: (1) ineffective assistance of counsel, and (2) a Giglio claim, see Giglio v. United States, 405 U.S. 150 (1972). In addition, petitioner now argues on appeal that the district court improperly denied his Giglio claim without adequate discovery.

The record indicates that on June 21, 1995, petitioner's habeas counsel moved for leave to propound discovery. The magistrate judge ruled that petitioner's request was "broad, burdensome on the government and resembled a fishing expedition on the co-defendant's case file." Accordingly, petitioner's attorney was instructed to "identify those portions of the record relevant to his claims of ineffective assistance of counsel or bias of the trial court." Petitioner was further advised that once the record was examined, a hearing, if necessary, could be held. Petitioner appealed the ruling, but the district court affirmed. The district court order, dated January 20, 1996, denied discovery relating to (1) an alleged delay in the sentencing of petitioner's co-defendant, (2) ineffective assistance of trial counsel, and (3) the prosecution's trial strategy.

This notwithstanding, an evidentiary hearing was held before the magistrate judge on April 19, 1996. At that hearing, counsel for petitioner was given the opportunity to question Benito M. Rodríguez-

-4-

Massó, petitioner's trial counsel, in relation to petitioner's ineffective assistance of counsel claim. After the presentation of additional witnesses not relevant to this appeal, the magistrate judge heard oral argument on petitioner's habeas claims. Following oral argument, the judge denied from the bench petitioner's request for disclosure of additional information pertaining to the confidential informant.

On February 24, 1997, petitioner, through counsel, filed a Motion Requesting Ruling on Pending Discovery Motions. The magistrate judge issued a written order on March 14, 1997, stating "we conclude that petitioner's . . . request is **MOOT** inasmuch as the discovery requested has been provided, thus his reiterated petitions for what he has already received are frivolous." The court reasoned, in part, that:

> [E]ven though the minutes of procedure do reflect that discovery requests pertaining to the existence and background of a confidential informant were denied, it remains a fact that throughout the evidentiary hearing attorney for petitioner was given ample opportunity to examine trial attorney Benito Rodríguez-Massó on issues such as: trial strategy, existence of an informant, available information regarding the informant, pretrial motions filed, plea agreements, the individuals present at the sentencing hearing, the sentencing court's demeanor and the existence of a cooperating co-defendant . . . . Thus, it is patently clear that petitioner's prior requests for discovery (except for a request to submit interrogatories

to the government and depose the co-defendant) were satisfied during the hearing.

The court added the following:

> Through his broad, general requests for discovery, counsel has repeatedly violated the provisions of Rule 6(b) of the 28 U.S.C. § 2255 Rules, which mandate that discovery requests be specific as to the documents sought. The court will not allow counsel to engage in a fishing expedition, absent some showing by him that: 1) petitioner's claims can remotely entitle him to relief; and 2) the evidence *specifically* requested provides support to those claims. See DeVincent v. United States, 632 F.2d 145, 146 (1st Cir. 1980).

Shortly thereafter, on March 27, 1998, the magistrate judge issued its report and recommendation that petitioner's § 2255 motion be denied. On January 13, 1999, the district court issued an opinion and order adopting the report and recommendation. On the same day, the court entered judgment dismissing the case. The instant appeal ensued.

### DISCUSSION

## I.  Ineffective Assistance of Counsel

Petitioner claims that his trial counsel's alleged failure to obtain information regarding the identity, whereabouts, and criminal record of the confidential informant in this case constitutes ineffective assistance of counsel. We disagree.

To succeed on an ineffective assistance of counsel claim, petitioner "has the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a

reasonable probability that, but for counsel's error, the result of the proceedings would have been different." Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996). In applying this test, first announced in Strickland v. Washington, 466 U.S. 668, 687 (1984), "judicial scrutiny of counsel's performance must be highly deferential." There is, in other words, a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As a corollary, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). In this regard, this Court has previously stated that "[t]he decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993).

Here, the record clearly demonstrates that petitioner's ineffective assistance of counsel claim is untenable. Petitioner's trial attorney, Rodríguez-Massó, testified before the magistrate judge that, contrary to petitioner's assertion, he knew the identity of the confidential informant. He explained that the identity of the informant had been provided to attorney Rafael Anglada, petitioner's original trial counsel. Mr. Rodríguez further testified that prior to trial he ascertained that the informant was not willing to testify on

-7-

behalf of the defense. Accordingly, Mr. Rodríguez believed that "any information, if at all, that [the informant] would have given at trial would have been not to [petitioner's] benefit but to [his] detriment." Under these circumstances, and given the fact that petitioner's co-defendant had agreed to testify for the government, Mr. Rodríguez determined that it was best "as a matter of legal strategy" not to call the informant as a trial witness. In addition, Mr. Rodríguez stated that although he was not aware of the informant's criminal record, which consisted of two complaints pertaining to domestic violence, he would not have called the informant to testify even if he had seen those records prior to trial.

Given this evidence, the district court correctly determined that trial counsel's decision not to personally interview the informant or call him as a trial witness was purely strategic in nature. This claim, therefore, cannot succeed. See Strickland, 466 U.S. at 689.

## II.  Giglio Claim

Petitioner next argues that an alleged delay in the sentencing of the cooperating co-defendant Martínez prejudiced him inasmuch as the lenient sentence Martínez received for his cooperation could have been used by petitioner to impeach Martínez at trial. Once again, we see no merit in this argument.

The government has a constitutional duty to disclose evidence that is favorable to a criminal defendant, be it exculpatory or

impeachment evidence.  See <u>Kyles</u> v. <u>Whitley</u>, 514 U.S. 419, 432-33 (1995); <u>United States</u> v. <u>Bagley</u>, 473 U.S. 667, 682 (1985); <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83, 86-87 (1963).  As petitioner correctly indicates, evidence of a prior agreement with a government witness not to prosecute that witness is generally considered impeachment material and therefore discoverable under <u>Brady</u>.  See <u>Giglio</u> v. <u>United States</u>, 405 U.S. 150, 153-54 (1972); <u>see also</u> <u>United States</u> v. <u>Dumas</u>, 207 F.3d 11, 16 (1st Cir. 2000) ("[I]t is clear that impeachment evidence falls within the <u>Brady</u> rule.").

At trial, Martínez  stated that he had not been promised anything in exchange for his testimony and specifically denied having received a promise of leniency.  While Martínez did indicate that two of the counts in his indictment were to be dismissed in exchange for his guilty plea, he clarified that the dismissal of the two counts was not contingent on his testifying in court.  The copy of the plea agreement, submitted by petitioner, confirms this testimony.  Martínez also indicated that a prior statement he made which exculpated petitioner was not true.  He explained that he had made the prior false statement under pressure from petitioner to assume responsibility for the crimes in exchange for a car and other assistance.

There is no question that Martínez  ultimately benefitted from the government's sentencing recommendation, adopted by the sentencing court, that a downward departure from the Sentencing

Guidelines was warranted in light of Martínez's substantial assistance. Nevertheless, we concur with the district court's conclusion that "[t]he evidence presented at trial shows that [petitioner's] codefendant did not receive a promise of leniency in exchange for his testimony." Tuesta-Toro v. United States, No. 95-1522, slip op. at 7-8 (D.P.R. January 11, 1999). This finding forecloses petitioner's argument. Where, as here, the record clearly indicates that there was no suppression of exculpatory or impeachment evidence by the prosecution, a Giglio claim fails as a matter of law.

While we need look no further to reject petitioner's claim, we note that petitioner has also failed to make the showing of materiality required under Brady. See Brady, 373 U.S. at 87; see also Kyles, 514 U.S. at 433-37 (citing Bagley, 473 U.S. at 682). Evidence is material under Brady only when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682; see also Kyles, 514 U.S. at 433-35; United States v. Cunan, 152 F.3d 29, 34 (1st Cir. 1998). Therefore, as the Supreme Court has indicated, "[w]e do not . . . automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict.'" Giglio, 405 U.S. at 153-54 (quoting United States v. Keogh, 391 F.2d 138, 148 (2d Cir. 1968)). In this case, as the district court

emphasized, the record is replete with additional evidence of petitioner's guilt other than Martínez's testimony. The record, for example, includes recorded phone calls indicating that petitioner was the supplier of the cocaine and the incriminating testimony of several other witnesses who testified for the prosecution.

Undaunted by the foregoing, petitioner now alleges that the district court erred by denying his requests for discovery of Giglio material. Specifically, petitioner states that he was denied the opportunity (1) to request a transcript of Martínez's sentencing, (2) to request all plea or cooperation agreements pertaining to Martínez, (3) to depose Martínez, and (4) to propound interrogatories on the government regarding the alleged delay in Martínez's sentencing. We remain unpersuaded.

Discovery in a habeas proceeding is a matter confided to the discretion of the district court. See Fed. R. 6(a) Governing 28 U.S.C. § 2255 Cases; see also Bracy v. Gramley, 520 U.S. 899, 909 (1997). Accordingly, discovery rulings in a habeas case are reviewed for abuse of discretion only. See, e.g., Clark v. Johnson, 202 F.3d 760, 765-66 (5th Cir. 2000); Campbell v. Blodgett, 982 F.2d 1356, 1358 (9th Cir. 1993); see also DeVincent v. United States, 632 F.2d 145, 146 (1st Cir. 1980).

Here, the record indicates that petitioner received an abundance of discovery, including a full evidentiary hearing held on

-11-

April 19, 1996. While the district court ultimately denied some of petitioner's discovery requests, it did so on the ground that "[p]etitioner's request for discovery amounts to no more than speculative assertions that Giglio material may exist." Tuesta-Toro, No. 95-1522, slip op. at 7. This ruling is well within the trial court's discretion.

First, petitioner ignores the fact that "a witness' 'nebulous expectation of help from the state' is not Brady material." Hill v. Johnson, 210 F.3d 481, 487 (5th Cir. 2000) (quoting Goodwin v. Johnson, 132 F.3d 162, 187 (5th Cir. 1997)). Second, and more important, "Brady is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." United States v. Beasley, 576 F.2d 626, 630 (5th Cir. 1978) (citing United States v. Agurs, 427 U.S. 97, 107 (1976)). Accordingly, "mere speculation about materials in the government's files [does not require] the district court or this court under Brady to make the materials available for [petitioner's] inspection." United States v. Michaels, 796 F.2d 1112, 1116 (9th Cir. 1986) (quoting United States v. American Radiator & Standard Sanitary Corp., 433 F.2d 174, 202 (3d Cir. 1970)); see also DeVincent, 632 F.2d at 146. Finally, pursuant to Rule 6(a), a habeas petitioner is required to show good cause for discovery requests. See Fed. R. 6(a) Governing 28 U.S.C. § 2255 Cases. In this case, petitioner has failed to make any such showing.

In summary, because the district court did not abuse its discretion in denying petitioner's request for additional discovery, and because the record indicates that the prosecution did not suppress exculpatory or impeachment evidence in this case, petitioner's Giglio claim fails.

## CONCLUSION

For the reasons stated above, we **affirm** the district court order dismissing Héctor Tuesta-Toro's 28 U.S.C. § 2255 petition.